People of the State of Illinois, Plaintiff-Appellee, v.
Patrick Leman, Defendant-Appellant.

Gen. No. 51,740.

First District, Second Division.

May 7, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Michael C. Zissman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

Defendant, Patrick Leman, was prosecuted in a trial without a jury and convicted of the offense of theft of property having a value in excess of $150, sentence being subsequently imposed upon him for a term of from not less than two (2) nor more than five (5) years in the State Penitentiary.

Defendant, by this appeal, advances two theories in urging a reversal of the judgment entered against him. Defendant first alleges that notwithstanding his self-professed indigency, prejudicial error was committed below by the trial judge's refusal to honor his pretrial request for representation by private counsel, other than the Assistant Public Defender appointed in his behalf. Secondly, defendant submits that the State failed to adduce either competent or credible evidence to establish the value of the stolen goods as exceeding $150, thereby failing to substantiate the aggravated sentence imposed upon him by the court. No challenge, however, is otherwise directed by defendant to the sufficiency of the evidence to sustain his conviction on the charge.

The circumstances of the offense in question are themselves undisputed. The case at bar concerns itself with the theft of numerous drug articles (People's Group Exhibit #13) and eleven General Electric slicing knives (People's Exhibits #2 through #12 inclusive) from the self-service shelves of the Aldens Shoppers World, Inc. store located at 6430 West Fullerton Avenue in the City of Chicago. The crime was perpetrated by three offenders in the early evening hours of February 1, 1966, and within the visual presence of the two State's witnesses, James Taylor and Ronald Poedtke, protection supervisor and security detective, respectively, for Aldens.

The defendant was positively identified by the witnesses as the man they observed taking and loading the aforementioned exhibits into a large cardboard box (People's Exhibit #1), which was placed atop a shopping cart with the help of a confederate. The witnesses testified that defendant thereafter hurriedly wheeled the cart and box past an unattended checkout counter, out the front door and into the adjacent parking lot, where he was met by an automobile driven by a companion. It was at this juncture that Taylor and Poedtke stated they overtook defendant and his two accomplices, placed them all under arrest, regained custody of the secreted proceeds of the crime then in defendant's possession, and called the police.

These items as well as the box were subsequently identified at trial by Taylor who testified, over objection, that by his computations from adding together the retail price tags affixed to all of the merchandise taken, the stolen goods had a total retail value of $529.36. The witness stated further, over similar objection, that he and a Mr. Loftus, the company's operator manager, had examined and computed the composite wholesale value of these items from the firm's cost records, arriving at a combined wholesale value of $365. Loftus was not called to testify for the State in this regard, prompting the

previously noted hearsay objections by the defense. This was, in essence, the extent of the testimony and evidence adduced at trial which finds relevance in this appeal, no testimony having been offered in behalf of the defense after the State rested its case. A motion for a finding of not guilty was denied by the court. It is from the denial of his subsequent post-trial motions for a new trial and in arrest of judgment that defendant takes this appeal.

Defendant's initial point is that of an allegation of prejudicial error emanating from the denial below of his right to representation by counsel of his own choosing, relying primarily upon the authority of People v. Owens, 86 Ill App2d 75, 226 NE2d 691 (1967) and People v. Ritchie, 66 Ill App2d 417, 213 NE2d 306 (1966). It is a right which defendant submits was frustrated and unavailing by virtue of the lower court's unwarranted imposition upon him of a public defender, absent an express finding of his indigency. This, by itself, he contends to have been contrary to the requisite standards for such appointments as set forth in Ill Rev Stats (1965) c 38, par 113–3(b). If this is to be, in fact, the underlying premise for defendant's theory, a perusal of the Report of Proceedings from the preliminary hearing of March 4, 1966, discloses his position to be a most untenable one. It was at that hearing that defendant himself, upon inquiry from the bench, explicitly acknowledged his indigency, the court appointing a public defender accordingly, without objection from the accused. An appearance, which is contained in the common law record before us, was entered by the Public Defender on that same date.

Here, the facts of the case do not favor defendant. Unlike his cited authority of People v. Ritchie, 66 Ill App 2d 417, 213 NE2d 306 (1966), defendant was not thrust into the dilemma of proceeding to trial unprepared under circumstances whereby he was in serious doubt as to exactly by whom he was represented. To the contrary, only after securing two continuances, and 105 days subse-

quent to the appointment of the public defender did defendant, in the case at bar, first interpose his request for "a bar association attorney." Moreover, application for the substitution was not addressed to the court until the very moment his cause was about to commence to trial on June 17th. This, in itself, has been held appropriate grounds to deny the substitution because of the staleness of the demand. People v. Jones, 51 Ill App2d 391, 201 NE2d 194 (1964) ; People v. West, 80 Ill App2d 59, 225 NE2d 397 (1967).

 Defendant's request was predicated below upon a barren and unsubstantiated claim that counsel, whom it would appear he had known for some time, told him that he "belonged in the penitentiary." To that charge, the public defender made no response, which failure the State attributes to counsel's continuing awareness of his duty to protect such confidential communications with his client. However, contrary to the State's suggestions, we are in no position to embark upon an examination into the veracity of defendant's accusation or the possible reasons why the statement may have been made by the public defender. The meaningful factor worthy of comment is that the purported remark nowhere appears to have undermined the attorney-client relationship to defendant's detriment, nor affected the zealousness with which defendant was represented. Defendant would appear furthermore to be of the same opinion, for he directs no claim to the professional incompetence of that counsel here on appeal. Rather, defendant adheres to the proposition that necessarily incident to his right to counsel, is the equal right to be afforded the opportunity to select counsel of one's own choosing. We cannot agree.

Directly controlling in this regard is section 4 of the Public Defender Act which, in mandatory terms, provides for the appointment of counsel for an indigent defendant, other than the public defender, only upon good cause shown, notably excepting from its requirements cases

216

wherein the charge arises from a noncapital offense occurring in counties having 500,000 or more inhabitants. More specifically, that statute provides:

> "Any court may, with the consent of the defendant *and for good cause shown,* appoint counsel other than the public defender, and shall so appoint if the defendant or accused shall demand *and show good cause for such appointment, except that no counsel other than the Public Defender shall be appointed to defend a person charged with the commission of a criminal offense other than a capital offense in a county containing 500,000 or more inhabitants. . . ."* (Emphasis supplied.) [Ill Rev Stats (1965) c 34, par 5604.]

The aforementioned italicized portions of this statutory proviso connote amendatory language to that Act which was amended by Act approved June 20, 1963, representing, as well as manifesting, a legislative intent of considerable departure from the statute in its preexisting form. It is because of this substantive change in terms that defendant's case of People v. Owens, 86 Ill App2d 75, 226 NE2d 691 (1967), wherein the arraignment proceedings predated the effective enactment of this language, is inapposite on its face in absence of the now incumbent obligation to show good cause.[1] While defendant's arraignment postdates the 1963 amendment, and the offense involved is noncapital, he nonetheless strongly advocates the nonapplication of the recent "good cause" requirement to his particular request for reasons he articulates in terms of fundamental fairness. It is an

---

[1] This statute has again since been amended, by Act approved September 7, 1967, to rectify its apparent inconsistency with Ill Rev Stats (1963), c 38, par 113–3(b) now reciting, "except as otherwise provided in Section 113–3 of the 'Code of Criminal Procedure of 1963.' "

217

argument which cannot be heard to defeat the operation of the statute on the record before us.

■ Clearly, an accused, regardless of ability to pay, enjoys the constitutional guarantee, in State proceedings, to legal representation for his defense. That principle obtains unqualifiedly, however, only to the extent that the accused be represented by competent counsel, an objection which is not taken in the case at bar. The right cannot be said to secure in and to an accused a right to select from or experiment with, the counsel so appointed. People v. Woods, 26 Ill2d 557, 188 NE2d 1 (1963). To hold otherwise, as defendant suggests, would to no measurable degree insure an accused of any higher caliber of representation, yet would encourage the increased utilization of such substitutions to the detriment of the orderly process of criminal justice in our courts. People v. White, 84 Ill App2d 178, 228 NE2d 169 (1967) ; People v. Gray, 33 Ill2d 349, 211 NE2d 369 (1965) ; People v. Cox, 22 Ill2d 534, 177 NE2d 211 (1961).

■ Defendant was expressly found to be indigent and continued to acquiesce for an extended period of time in the court appointment of his counsel. He first addressed his demand on the day of the trial and, neither at that time nor on appeal, made claim to the incompetence of the public defender. In fact, it appears that defendant was capably represented. Accordingly, defendant failed to meet the requirements of the statute in question, and we can find no abuse of judicial discretion by the court's refusal to honor his request. People v. DeMary, 37 Ill2d 364, 227 NE2d 361 (1967) ; People v. Jones, 51 Ill App2d 391, 201 NE2d 194 (1964).

Lastly, defendant contends that the goods taken and seized from his possession were not proven beyond a reasonable doubt to exceed $150 in total value. He attacks in particular the stature of the lay witness, James Taylor, (the protection supervisor) to testify as to the retail

value of these items. This we deem to be an ill-founded contention.

■ The issue presented affects neither guilt nor innocence, but rather the propriety of the duration of imprisonment imposed. Ill Rev Stats (1965) c 38, par 16–1. The crux of the question is the fair cash market value of the unlawfully seized commodities. By the nature of the business involved and the circumstances as they have been aptly demonstrated to this court, that value, in our opinion, would be most accurately reflected by the prices these items were capable of commanding by consumer purchase on the retail market; to wit, the retail price. People v. Hansen, 28 Ill2d 322, 192 NE2d 359 (1963).

■ If from only the basis of common experience, Taylor was competent and qualified to testify as to retail value, particularly inasmuch as nothing was left open to his opinion. The witness' representation as to that value was based exclusively upon his personal observation and computation of the retail price tags which were then, and as of the date of trial, remained affixed to the goods on exhibit before the court and defendant. This was firsthand testimony by an in court declarant which lay directly open to cross-examination for impeachment purposes as to discrepancies, hence we can find no fault or discredit with the procedure employed. The very recent case of People v. Davis, 94 Ill App2d 86, 236 NE 2d 423, wherein testimony of this exact nature was deemed sufficient in law, we think is dispositive of the argument defendant advances. The combined value of People's Exhibits #2 through #13 inclusive was established beyond a reasonable doubt to far exceed $150.

For the above reasons, the judgment is affirmed.

Judgment affirmed.

BURKE, P. J. and McNAMARA, J., concur.