THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RAY NELSON, a/k/a RAYMOND NELSON, Defendant-Appellant

(No. 60846;

First District (1st Division)—September 2, 1975.

James J. Doherty, Public Defender, of Chicago (Saul H. Brauner and Thomas F. Finegan, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and John F. Brennan, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

In March of 1973, a jury in the circuit court of Cook County found Raymond Nelson guilty of robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—1), and he was sentenced to a term of one to three years' imprisonment. Prior to trial the judge ruled that the State would be permitted to impeach the defendant's credibility with a prior conviction for possession of heroin. In view of the judge's ruling, the defendant introduced the prior conviction during direct examination. On appeal, defendant contends: (1) that it was error to rule that the prior conviction could be used to impeach his credibility; (2) that the prosecutor's closing argument was prejudicial; and (3) that the evidence did not prove him guilty beyond a reasonable doubt. We will state the pertinent facts and first consider the sufficiency of the evidence.

On August 3, 1971, at approximately 2:15 a.m., Chicago Police Officers Humphrey, Spanos, Sumner, Parrot, Redelk and Orceloy of the CTA Task Force were deployed as a decoy unit at the Jackson and Van Buren subway station. Officer Humphrey, dressed in a sports coat, tie, trousers, and dress shirt, sat directly in front of the train tracks against an iron pillar located between two utility closets. In order to feign intoxication, a whiskey bottle was placed at the right side of Humphrey, who assumed a "stretched out" position. Three of the remaining officers hid in a utility closet approximately 12 feet from Humphrey, while the other two officers hid in a similar utility closet approximately 25 feet on the other side of Humphrey. The metal doors of both utility closets had windows with louver vents through which the officers could see the surrounding area.

Humphrey testified that about five minutes had passed before he was approached by the defendant. Nelson nudged Humphrey a couple of times from the right side before Humphrey glanced up in response. The defendant stepped behind the pillar and said, "Don't move or I'll slit your throat." The defendant, using his left hand, leaned to the left side of Humphrey and removed the wrist watch from Humphrey's left hand by unsnapping the watch's band and sliding the watch off Humphrey's wrist.

Humphrey immediately rolled to his right, jumped to a standing position about six to eight feet from Nelson, and said, "I am a police officer.

You are under arrest." Although Humphrey was armed with a .38 snub-nose revolver, he did not draw the weapon at the time he arrested the defendant. The other five officers then emerged from the utility closets. The defendant did not have a weapon of any kind in his possession.

Officers Spanos, Sumner and Parrot were together in the utility closet located 12 feet to the left of Humphrey's position. Spanos and Sumner had an unobstructed view through the louver vents in the window. Both Spanos and Sumner testified that they saw the defendant approach Humphrey, shake him, and then remove the watch by sliding it off Humphrey's wrist. Sumner exited the closet with his revolver drawn. The officers searched the defendant but they could not initially find the watch. Spanos then noticed the watch on defendant's left wrist and removed it. After Spanos had apprised defendant of his rights, the defendant said, "Looked so good I just had to have it." Officer Parrot also testified that the watch was discovered on the defendant's left wrist.

Detective David Olsen testified that he and his partner, Robert Utter, questioned Nelson on the evening of his apprehension at the First District police building. After being advised of his rights, the defendant told Olsen that Humphrey appeared to be drunk and asleep; that he shook Humphrey before removing the wrist watch; and that he told Humphrey, "Don't move or I'll cut your throat." When asked why he took the watch, the defendant replied, "The watch looked so good, I just had to have it. I couldn't pass it up."

Defendant testified in his own behalf. He departed from his sister's home at about 2 a.m. on August 3, 1971, in order to travel by "El" train to a YMCA located at 826 South Wabash. Nelson fell asleep and passed his intended departure point, the Harrison Street station. He left the train at the Jackson and Van Buren subway station to catch a southbound train back to Harrison Street. It was on the south end of the station platform where the defendant saw Humphrey lying against a pillar appearing either intoxicated or asleep.

Defendant claimed that Humphrey was positioned dangerously close to the edge of the platform. Being concerned for Humphrey's safety, the defendant approached Humphrey and said, "Say, my man, say, say." As defendant shook Humphrey, the other officers appeared from the utility closets. Humphrey jumped from his sitting position and drew his revolver. The defendant denied taking Humphrey's watch. Defendant also denied that he threatened to slit Humphrey's throat or that he made any admission or confession to a police officer.

Nelson stated on direct examination that August of 1963 was the last time he had been convicted of possession of heroin. In May of 1969 he was released from the penitentiary for that charge. He has been a drug

addict for 21 years, beginning his use of drugs at the age of 13. Defendant supported his habit by doing odd jobs and by obtaining money from girls who worked for him as prostitutes. Since the Drug Abuse Program was supplying Nelson with methadone in August of 1971, he was not using heroin and had no reason to steal to support his habit. Defendant testified that his entire left side is paralyzed due to a knife wound received in his neck in 1969.

■■ Upon this record the jury could properly find the defendant guilty beyond a reasonable doubt. Defendant argues that he could not have removed the wrist watch with his left hand as quickly as the police officers described because of paralysis in his left side. However, three officers testified that they saw defendant use his left hand to remove the watch from Humphrey's wrist, and that the watch was found on the defendant's left wrist. Testimony from two witnesses indicated that the defendant, on two occasions, admitted taking the watch from Humphrey. Moreover, the record indicates that defendant, in fact, had the ability to move his left arm and left hand. The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification. (*People v. Stringer*, 52 Ill.2d 564, 289 N.E.2d 631.) A reviewing court in Illinois will not substitute its judgment for that of the finder of fact on questions involving the weight of evidence or the credibility of witnesses, unless the evidence is such as to raise a reasonable doubt of guilt. (*People v. Jones*, 60 Ill.2d 300, 325 N.E.2d 601.) In this case, defendant was caught in the act of stealing a wrist watch by six police officers. We believe that the evidence against the defendant is overwhelming. Raymond Nelson was proven guilty beyond a reasonable doubt.

Defendant's second contention is that it was error for the trial court to rule in a preliminary hearing that a prior conviction for possession of heroin could be used to impeach his credibility. Defendant argues that the trial judge's ruling was improper under *People v. Montgomery*, 47 Ill. 2d 510, 268 N.E.2d 695. It is urged that the offense of possession of heroin does not reflect adversely on the defendant's honesty or integrity. Moreover, it is argued that the prejudicial impact on the jury of defendant's admission was unwarranted.

■■ *Montgomery* held that the admission of prior convictions to impeach the credibility of defendants rests in the sound discretion of the trial court subject to specified limitations. (*People v. Washington*, 55 Ill. 2d 521, 304 N.E.2d 276.) Under the general rule adopted by *Montgomery*, the credibility of a witness may be impeached by evidence of a prior conviction, except a plea of *nolo contendere*, if such crime, (1) was punishable by death or imprisonment in excess of one year, or (2) in-

volved a dishonest or a false statement regardless of the punishment, unless (3) in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice. Evidence of a conviction is not admissible if a period of more than 10 years has elapsed since the date of conviction or of the release of the witness from confinement, whichever is the later date. Factors which should be considered in weighing the probative and prejudicial values of admitting a prior conviction are: nature of the crime, the nearness or remoteness of the prior conviction, the subsequent career of the defendant, and whether the crime was similar to the one charged. *People v. Dee,* 26 Ill.App.3d 691, 325 N.E.2d 336; *People v. Stufflebean,* 24 Ill.App.3d 1065, 322 N.E.2d 488; *Gordon v. United States,* 383 F.2d 936 (D.C. Cir. 1967).

■■ We do not believe that the trial court abused its discretion in this case. The record discloses that the trial judge was fully cognizant of the factors outlined in *Montgomery.* Possession of heroin is not synonymous with drug addiction. The offense of possession of heroin does indicate a disposition to place the advancement of individual self-interest ahead of principle or the interest of society, and such proof may suggest a willingness to do so again on the witness stand. (*People v. Duffy,* 36 N.Y. 2d 258, 326 N.E.2d 804 (1975).) The trial court's ruling was directed solely to the use of defendant's prior crime of possession of heroin. We believe that the defendant's prior conviction does reflect adversely on his honesty and integrity. Moreover, the trial judge noted that the defendant's prior conviction of possession of heroin was a different type of offense than robbery. Furthermore, the defendant on direct examination volunteered in detail the circumstances and conditions surrounding his 21 years of addiction. Much of the defendant's testimony was beyond the scope of the trial court's ruling. Since the defendant introduced this type of prejudicial testimony, he cannot object to its adverse prejudicial impact on review. (*People v. Sledge,* 71 Ill.App.2d 285, 218 N.E.2d 845.) The trial judge's ruling satisfies the standards set forth in *Montgomery* and did not subject the defendant to the danger of unfair prejudice.

Defendant lastly contends that certain statements contained in the prosecution's closing argument were prejudicial. The prosecutor argued in closing that the jury could surmise from their common experience that an addict had to steal at least one time in 20 years in order to support his drug habit. The prosecutor also argued that failure to convict the defendant would encourage crime on the CTA. No objection was offered at trial to the prosecutorial statements in question.

■■ A prosecuting attorney has the right to draw legitimate inferences from facts and circumstances proved. (*People v. Miller,* 13 Ill.2d 84, 148

N.E.2d 455.) The fact that defendant had been an addict for 21 years was in evidence. Defendant offered the fact that he was unemployed and on public assistance at the time of the incident. Motive is a proper subject of comment. (*People v. Shack*, 396 Ill. 285, 71 N.E.2d 633.) Upon the record, it was clearly within the bounds of proper debate to suggest that the defendant was motivated to steal by a desire to support his drug habit. (*People v. Palmer*, 47 Ill.2d 289, 265 N.E.2d 627.) Furthermore, the prosecutor's comment regarding crime on the CTA is legitimate. It is always proper for the prosecutor to dwell on the evil results of crime and to urge fearless administration of the law. (*People v. Halteman*, 10 Ill.2d 74, 139 N.E.2d 286.) We do not find the prosecutor's closing argument prejudicial to the defendant.

For these reasons, the judgment is affirmed.

Judgment affirmed.

GOLDBERG and SIMON, JJ., concur.