THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MELVIN PUMPHREY, Defendant-Appellant.

First District (2nd Division)   Nos. 61174, 76-752 cons.

Opinion filed July 19, 1977.

James Geis and Richard Steck, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Renee Goldfarb, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant, Melvin Pumphrey, was charged by indictment with the offense of armed robbery in violation of section 18—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 18—2). Upon a jury trial defendant was found to be guilty as charged. Judgment was entered on the verdict and defendant was sentenced to serve a term of confinement of 4-6 years in the Illinois State Penitentiary.

From entry of the judgment of conviction defendant appeals contending that certain evidence was improperly adduced and served to deny him a fair trial. Specifically, defendant asserts that the trial court erred in permitting the State (1) to cross-examine a defense witness and defendant concerning their prior use of assumed names; (2) to cross-examine the witness about her arrest in connection with the armed robbery which gave rise to the instant charges; and (3) to introduce collateral evidence of defendant's use of an assumed name.

A review of the facts adduced in the case at bar reveals that at approximately 10:30 p.m. on Friday, February 25, 1972, Judee Potter was returning to her home following presentation of a school play held at the

Arnold School in Chicago, Illinois. Potter parked her automobile in the vicinity of 1450 N. Astor Street and attempted to retrieve some property from the trunk of her vehicle. Another automobile, described as a green 1970 Buick Skylark, drew near so as to permit its occupant to ask directions of Miss Potter. The driver seized this opportunity to open the car door, point a silver pistol toward Potter and demand her purse. She complied and the assailant drove away. Potter noted that the vehicle carried Illinois license plates bearing number 936 893.

Potter testified that during this episode the area was illuminated by a street lamp as well as light from the interior of the automobile and Potter characterized the illumination as "very bright for evening." From a distance of "a few feet" and for a period of 1-2 minutes Potter observed the features of her assailant.

Approximately ten minutes later, Chicago Police Officer William Disselhorst arrived on the scene and interviewed Miss Potter. She provided the officer with the license number of the assailant's car and described him as a male Negro, 30-40 years of age, 5'9"-5'10" in height, weighing 180 pounds, black hair, dark eyes, light complexion, and wearing a black vinyl coat and a red and gold striped scarf. She also informed the officer that the assailant had a short thick neck and a wide nose. At trial, Potter positively identified defendant as the man who robbed her at gunpoint.

Based upon the license number provided by Potter, Chicago Police Investigator Monroe Vollick ascertained that the vehicle was registered to Mary Pumphrey, defendant's spouse. Vollick obtained a photograph of defendant and showed it and several others to Judee Potter. Potter selected defendant's photograph as portraying her assailant.

Defendant was arrested on March 15, 1972, and was placed in a lineup which was viewed by Potter. She again identified defendant as her assailant.

Vollick testified that he subsequently spoke with defendant in an effort to locate the automobile employed in the robbery. Defendant indicated that the car was under repair in a garage located at 800 W. 63rd Street but was unable to provide the officer with the name or telephone number of the shop. Vollick stated that he attempted to locate the vehicle without success.

At the time of trial, defendant was 5'5" in height and weighed 145-150 pounds. Admitting a discrepancy between defendant's stature and her description of the assailant, Potter testified that her description was "totally off" in this regard. However, Potter characterized her description of defendant's facial features as "very accurate."

Defendant testified in his own behalf and denied any participation in the crime charged in the indictment. Defendant testified that on the day in

question he was employed until 4 p.m. as a substitute janitor at the Arnold School in Chicago, Illinois. Defendant was also self-employed as an interior decorator and, in association with his wife, operated a home furnishings store located at 820 E. 79th Street. Defendant indicated that he arrived at his store between 4:30 and 6 p.m. and proceeded to the home of Inez Collins where he was employed to perform certain repairs. According to defendant, he remained at the Collins residence continuously until 11:45 p.m.

Inez Collins testified that defendant arrived at her home at approximately 6 p.m. and began work. At approximately 9 p.m., Inez Collins left defendant in the company of her husband and, upon her return near midnight, defendant had gone. Mr. Collins did not testify at defendant's trial.

Defendant also adduced the testimony of his wife, Mary Pumphrey. She testified that at approximately 8:30-8:45 p.m. on February 25, 1972, she, too, was the victim of an armed robber who held her captive for a period of 10 minutes. According to Pumphrey, she was accosted in an alley behind her store by a man who drew a weapon and stole her purse and automobile. The purse contained currency, the keys to the store and the vehicle registration. She fled and summoned police.

Chicago Police Officer Lorenzo Morgan arrived at the scene at approximately 10 p.m. and initiated an investigation. According to Morgan, Pumphrey described her assailant as a male Negro, 5'10" in height, weighing 180-200 pounds, black hair, brown eyes, dark complexion and wearing a dark, navy-type jacket with a white hood. Pumphrey also informed the officer that the stolen vehicle bore her .38-calibre Smith & Wesson revolver.

Upon questioning by Officer Morgan, Pumphrey stated that she did not know her license plate number and would not have access to this information until her husband returned to the store. She toured the area with Officer Morgan and subsequently in the company of her sister, Willie Mae Jackson, but was unable to locate the missing vehicle. Morgan advised Pumphrey to telephone the police and supply them with the license plate number.

Chicago Police Officer John Speid arrived at the store in response to Pumphrey's telephone call at approximately 12:15 a.m. Pumphrey provided the officer with the license plate number at this time. According to Speid, she described her assailant as a male Negro, 40-45 years of age, 5'8"-5'10" in height, weighing 210-220 pounds and wearing a black waist-length pea coat, a black knit hood, and dark trousers. She was unable to describe the assailant's hair and eye color or his complexion. Pumphrey did not inform Speid that she had reported the crime earlier or that a weapon was amongst the proceeds of the robbery. However, she

informed Speid that she had been molested during the course of the assault.

Pumphrey again telephoned the police on February 26, 1972, to inform them that her purse had been returned by an unidentified individual and that its contents were generally intact. Pumphrey also testified that her automobile was subsequently recovered from a police impoundment lot in an inoperable condition. According to Pumphrey, the car was repaired at J&T Autos, located at 950 W. 63rd Street, and Officer Vollick was duly informed of this fact.

In rebuttal, the State adduced into evidence certified conviction statements establishing that defendant was convicted in 1969 of the offense of deceptive practices and was also convicted in 1970 of the offense of forgery.

Defendant initially contends that it was error for the trial court to permit cross-examination of a defense witness and defendant concerning their prior use of assumed names and to allow the introduction of rebuttal testimony to contradict defendant's denial that he employed such a device.

On direct examination, defendant stated that his name was Melvin Pumphrey. On cross-examination, the prosecution asked whether, in September of 1970, he had stated that his name was "Melvin Howard." Defendant denied making such a statement. Defendant was also asked whether, on March 3, 1971, he had given his name as "Lester Green." Again, defendant denied making such a statement. In rebuttal, the trial court permitted the State to adduce the testimony that on each of the aforementioned occasions defendant had employed an alias.

Similarly, on direct examination, defendant's spouse testified that her name was Mary Pumphrey. On cross-examination, the State was permitted to question the witness as to whether she was known by or had used any other names. The witness admitted using the names "Mary Harris" and "Mary Wright." The name "Harris" was her maiden name. The witness was also asked whether she had employed the names "Mary Washington" and "Carolyn Wright." The witness denied that she had used either name. No rebuttal evidence was introduced to contradict this testimony. Defendant promptly objected to this line of interrogation and his objections were overruled. Yet the trial court failed to maintain any consistency in its rulings on this matter. We note that when Mary Pumphrey's sister, Willie Mae Jackson, was cross-examined by the prosecution, she was asked if Mary Pumphrey was known by any other name. Defense objection to this question was sustained. In any case, it remains uncontroverted that the prosecutor repeatedly posed questions concerning the use of aliases interspersed with questions implying the use of a false address.

■■ In situations where the defendant testifies in his own behalf, the rule as to the propriety of questions and the admissibility of testimony regarding his prior use of aliases was established in *People v. Singer* (1919), 288 Ill. 113, 121 N.E. 327. In *Singer*, the Illinois Supreme Court held that it is proper to question the defendant regarding his use of assumed names if proof of the assumed names was offered into evidence and was shown to be material and admissible. In the instant case, defendant asserts that the evidence in question was adduced solely to raise an inference that he and his wife had employed assumed names in order to evade apprehension by law enforcement officers for prior criminal offenses. Such evidence has been deemed highly prejudicial. See *People v. Warfield* (1913), 261 Ill. 293, 103 N.E. 979; *People v. Dukes* (1957), 12 Ill. 2d 334, 146 N.E.2d 14; *c.f. People v. Carr* (1969), 114 Ill. App. 2d 370, 252 N.E.2d 912.

In support of its position, the prosecution relies on the cases of *People v. Hicks* (1935), 362 Ill. 238, 199 N.E. 368, and *People v. Smith* (1945), 391 Ill. 172, 62 N.E.2d 669. These cases merely recite the abstract proposition of law that impeachment lies if it is established that a witness has made a statement at another time inconsistent with his testimony on the witness stand and that if an accused testifies in his own behalf his credibility then becomes subject to attack; For example, evidence may be put in rebuttal by the prosecution in order to establish that the accused's reputation for truth and veracity is poor.

■■ To be sure, a witness' use of an assumed name technically represents a prior inconsistent statement when compared to such witness' testimony under oath. However, the law pertaining to the admission into evidence of prior inconsistent statements for purposes of impeachment is well-established. Such inconsistencies must be demonstrated to be substantial and relate to a material and not a collateral or irrelevant matter. (*People v. Boyd* (1974), 22 Ill. App. 3d 1010, 318 N.E.2d 212; *People v. Rainford* (1965), 58 Ill. App. 2d 312, 208 N.E.2d 314.) The test is whether the fact for which the testimony is offered in contradiction of a witness' testimony could have been shown in evidence for any purpose independently of the alleged contradiction. (*People v. Pfanschmidt* (1914), 262 Ill. 411, 104 N.E. 804.) Hence, if the matter on which the impeaching testimony is introduced is solely to contradict the witness and is not material or relevant for any other purpose, it is not admissible. It may be reversible error to impeach a witness, even though the testimony contradicts him, if the impeaching evidence brings out evidence of other crimes not otherwise admissible. (See *People v. Kirkwood* (1959), 17 Ill. 2d 23, 160 N.E.2d 766.) To the extent that the case of *United States v. Waldon* (7th Cir. 1940), 114 F.2d 982, is contrary to this position, we respectfully decline to follow that federal precedent. We note in passing,

however, that in *Waldon* the indictment charged *inter alia* that the defendant had employed various aliases in connection with the charges brought against him.

■■ In the instant case, defendant's identification as Melvin Pumphrey was not material to the charges against him. His use of an assumed name had nothing to do with the issues in the case and was immaterial. (*Cf. People v. Carr.*) Mary Pumphrey's use of an alias is even further removed from the issues properly presented to the jury. Moreover, inasmuch as the State failed to prove her use of the names "Mary Washington" and "Carolyn Wright," the State has failed to perfect its "impeachment" under *Singer.* The jury was left with more than an insinuation of wrongdoing on her part and was permitted to speculate as to the possible extent of such wrongdoing. The State's "impeachment" of defendant and Mary Pumphrey was error.

Upon a careful review of the record we are not satisfied that the errors complained of were harmless. Our Supreme Court has ruled that a reversal is required where the reviewing court finds severely prejudicial errors which cannot be said not to have contributed to the conviction even though "considerable evidence" was adduced in support of defendant's guilt. *People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880.

In light of our disposition of the case, we need not consider the additional points raised by defendant as grounds for reversal.

For the aforementioned reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

DOWNING, P. J., and PERLIN, J., concur.