THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN FINLEY *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 77-1266, 77-1267 cons.

Opinion filed July 24, 1978.—Supplemental opinion filed on denial of rehearing August 14, 1978.

Ralph Ruebner and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant John Finley.

James J. Doherty, Public Defender, of Chicago (Richard D. Kharas, Assistant Public Defender, of counsel), for appellant Lawrence Laney.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ellen Dienes, and Timothy D. McMahon, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, defendants John Finley and Lawrence Laney were convicted of robbery and were each sentenced to 5 to 15 years. Their separate appeals were consolidated. Separate briefs have been filed for each defendant.

In this court, Laney claims that the State failed to prove him guilty of robbery beyond a reasonable doubt in view of the refusal of the trial court to instruct the jury on the theory of accountability. Defendant Finley contends that he was denied a fair trial when the trial court permitted improper testimony to be placed before the jury; the trial court and the prosecutor improperly informed the jury that the codefendant Laney had used an alias; the trial court improperly permitted the prosecutor to show that defendant was unemployed, and the prosecutor made improper closing arguments. Finley also contends that the post-trial proceedings were unfair because he was not granted counsel of his choice during the hearing of post-trial motions and sentencing.

The evidence shows that on September 24, 1976, the victim, a woman some 80 years old, went to her bank in Oak Park. At about 1 p.m. she

started to walk home. She testified that a car stopped at the curb, a black man came out, pushed her against the fence, seized her purse and ran back into the car. She was too frightened to identify the car or her assailant.

Oak Park Police Officer Giammona was on routine patrol. About 12:30 p.m. he observed a black and cream Chevrolet without license plates. He attempted to follow this car but lost it in traffic. Shortly after 1 p.m. he saw the same automobile driving at a high rate of speed through a red traffic light. The officer curbed the vehicle. It was being driven by defendant Laney who stepped out and walked to Giammona's car. Finley was in the automobile. Giammona told Laney to wait in the car while he prepared a traffic citation. Officer Stachura drove by and observed the latter incident. He spoke briefly to Giammona and proceeded on his way. His car was stopped by an unidentified citizen with whom he had a conversation. Stachura then sent a radio message to Giammona and proceeded to join him. The two officers drew their guns and approached Laney's car. Laney exited the car on the driver's side and Finley exited on the passenger's side. Finley began walking south, away from the car. When ordered to halt, he began to run. The officers arrested both men. Stachura noted a brown vinyl ladies purse on the floor by the front seat between the passenger door and the center of the car. The purse contained a bank deposit slip with the victim's name.

Laney did not testify. Finley testified that he was a passenger and Laney drove the car. They picked up a third individual named Clarence Williams. They drove him a short distance and he asked to be let out. Finley stated that later their car was stopped by Officer Giammona. He used racist profanity towards Finley and threatened him with bodily injury. Finley further testified that he left the vehicle, began walking away and then ran. He first saw the victim's purse when Officer Stachura later showed it to him in the police car. He did not know where Clarence Williams lived.

The single argument raised by Laney is the absence of an instruction on accountability and the contention that the evidence is insufficient to prove Laney's guilt. The People tendered an instruction on accountability. (IPI Criminal No. 5.03.) The court sustained an objection to this instruction by counsel for defendant Laney and refused to give it to the jury.

■■■ The Illinois Criminal Code states the principle of accountability which parallels the common law theory of accessories. The statute provides for legal accountability of a defendant for the conduct of another. This is predicated upon the fact that the defendant has solicited, aided, abetted, or agreed or attempted to aid in the planning or commission of the offense with intent to promote or facilitate such commission. (Ill. Rev. Stat. 1975, ch. 38, par. 5—2(c).) It has been held

that proof of the presence of the defendant at the commission of the crime is not by itself sufficient to prove accountability, but, where the proof shows presence of the defendant at the commission of a crime without disapproving or opposing it, this evidence is properly considered as one of the circumstances which tend to prove guilt by accountability. (See *People v. Morgan* (1977), 67 Ill. 2d 1, 8-10, 364 N.E.2d 56, and authorities there cited.) In this regard it has also been held that accountability need not necessarily be proved by direct evidence of a specific agreement for participation in the crime. Proof of accountability may be by circumstances which show a common design to do an unlawful act to which consent has been given by the participants. See *People v. Tate* (1976), 63 Ill. 2d 105, 109-10, 345 N.E.2d 480, and authorities there cited.

■■ The evidence in the case before us shows that defendant Laney was the driver of the automobile and Finley was a passenger. The purse, which was the property of the victim, was found on the floor of the car near the front seat where Finley was seated. Under these circumstances, the inference may readily be drawn that Laney drove the car and that Finley actually seized the purse from the victim. The automobile was stopped close to the scene of the crime, shortly after it occurred. It had no license plates and had just sped through a traffic light. All of these circumstances combined are ample to prove the accountability of Laney. The determination of the jury regarding the guilt of Laney should not be set aside by us unless the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of Laney's guilt. (*Tate*, 63 Ill. 2d 105, 108.) We find no such reasonable doubt in the case before us. In our opinion, the trial court should have instructed the jury on the issue of accountability. However, failure of the trial court so to do was not error, upon which defendant Laney, who caused the error, can rely. In fact, the error in this regard may well have assisted Laney and redounded to his benefit. In our opinion, the evidence of guilt as to both defendants is strong beyond reasonable doubt.

We will next consider the various claims of error raised by defendant Finley. On direct examination Officer Stachura testified that he had a conversation for about 3 minutes with an unidentified individual. At this point, counsel for Finley stated, "Objection." Counsel for Laney joined in the objection. The trial court brushed these objections aside but the questions went no further and the substance of the conversation was never shown.

■■ Counsel for defendant Finley claims that this testimony regarding occurrence of the conversation was improper because it permitted an inference that the unidentified eyewitness gave a description of the offenders to Officer Stachura. We reject this contention. Quite aside from

the issue of the generality of the objection (see *People v. Bell* (1975), 27 Ill. App. 3d 171, 176, 326 N.E.2d 507), the testimony of the witness was confined to the simple fact that the conversation had occurred. He did not testify to the substance of any part of the conversation. Therefore, his testimony was not hearsay. The entire testimony of this witness was in court, under oath and subject to cross-examination. See *People v. Sanders* (1976), 37 Ill. App. 3d 236, 239, 345 N.E.2d 757; *People v. Coleman* (1974), 17 Ill. App. 3d 421, 427, 308 N.E.2d 364, *appeal denied* (1974), 56 Ill. 2d 583.

■■ In speaking to the panel of prospective jurors, the trial judge mentioned the fact that defendant Laney was "otherwise called Frank J. Brown." The caption of the information herein refers to "Lawrence L. Laney otherwise called Frank J. Brown." Twice during trial the prosecutor referred to Laney "also known as Frank Brown." No objection was made at either time. Also, in questioning a group of prospective jurors, counsel for Laney asked them if the fact that Laney had used an alias would prejudice them. The jurors answered negatively. Counsel for defendant Finley now urges that these matters constitute reversible error. We disagree.

Since this issue was never raised in the trial court by objection or otherwise, it may not be raised for the first time in this court. We do not find that these incidents can possibly achieve the status of plain error. (*People v. Howell* (1975), 60 Ill. 2d 117, 120-21, 324 N.E.2d 403; *People v. Osborn* (1977), 53 Ill. App. 3d 312, 319, 368 N.E.2d 608, *appeal denied* (1978), 71 Ill. 2d 600, and cases there cited.) We reject the argument that counsel for defendant Finley was in a "weak position" to object if he thought that an objection should be made. We conclude that this issue has been waived.

If the matter should be considered on the merits, in our opinion, the authorities cited by defendant Finley in this regard are completely unconvincing. In *People v. Pumphrey* (1977), 51 Ill. App. 3d 94, 366 N.E.2d 433, this court dealt with a situation in which both defendant and his wife were cross-examined extensively regarding use of assumed names. The defendant denied that he had used other names. In rebuttal, the State put in evidence certified copies of previous convictions of defendant while using different names. These tactics thus became one of the principal features of the State's case.

In *People v. DeHoyos* (1976), 64 Ill. 2d 128, 355 N.E.2d 19, the trial court permitted extensive examination of a person whose advice defendant had sought and in whose home defendant had stayed for several days immediately after commission of the crime. The examination not only concentrated on the past conviction of the witness for sale of

narcotics but went into the sentence and the length of time he had actually spent in prison. The supreme court held that this was reversible error.

In the case before us, the allusion to use by defendant of another name was limited to mention of this fact to prospective jurors. Also, there was a casual reference by the prosecutor on two occasions during trial to the use of another name by defendant Laney. The word alias was never used and no reason was shown for use of the other name. We find no reversible error in this regard.

■■ On cross-examination of defendant Finley, the prosecutor asked, "Q. Mr. Finley, where were you working on September 24, 1976?" Counsel for Finley objected on the ground that the question was beyond the scope of the direct examination and was irrelevant. The trial court overruled this objection. Defendant Finley then responded, "I wasn't working." The defendant now urges that this testimony was improper because it played upon social prejudices. After giving due consideration to this evidence, we cannot agree that it constituted reversible error. No authority is cited by defendant in support of this position and we are aware of none.

■■ Regarding alleged improper closing arguments to the jury, counsel for defendant Finley points out an assertion by the prosecutor that Finley was the one who left the automobile and robbed the complaining witness. An objection by defendant to this statement at trial was overruled by the trial court. There is evidence in the record, as above shown, which reasonably justifies the assertion that Laney was the driver of the automobile and Finley was the passenger. The inference is also reasonable that the passenger seated on the right side of the automobile would logically be the one to exit for the purpose here demonstrated. In our opinion, it follows that this argument was not improper because it "is based upon relevant evidence in the record or legitimate inferences deducible therefrom." *People v. Wright* (1974), 56 Ill. 2d 523, 531, 309 N.E.2d 537, and cases there cited.

We cannot agree that this argument was in effect an expression of the opinion of the prosecutor as to the guilt of defendant Finley. In fact, as above pointed out, the guilt of the defendants in this case is equal regardless of which one drove the automobile and which one actually seized the victim's purse.

■■ The counsel for Finley also claims reversible error in the statement by the prosecutor concerning the problem of street crime against senior citizens. We have examined the arguments of the prosecutor. We conclude that the statements in this regard are proper in view of pronouncements of our supreme court which have approved the right of the prosecutor in final argument to dwell on the evil results of crime and

to urge fearless administration of the law. *People v. Hairston* (1970), 46 Ill. 2d 348, 375, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658; *People v. Nelson* (1975), 31 Ill. App. 3d 934, 939, 335 N.E.2d 79.

The verdict of the jury was returned on January 20, 1977. The proceedings were continued to February 24, 1977. On that date the trial court was informed that De Lars Bracy, Esq., the privately retained attorney who had represented defendant Finley throughout trial, had died shortly after the verdict was received. In open court the trial court asked defendant Finley if he would like to have an opportunity to retain new counsel to file motions and to proceed in his behalf. Defendant informed the trial court that he could not afford counsel. He told the court, "I would like a public defender to file a motion for a new trial." James O'Regan, a public defender who acted as attorney for codefendant Laney, stated that he would file his appearance for Finley. Finley then affirmed to the trial court that it was his desire that Mr. O'Regan handle his motion for a new trial. The record shows an affidavit by defendant Finley, filed February 24, 1977, to the effect that he is unemployed, has no salary, no income and no assets.

On March 17, 1977, defendant Finley objected to his representation by the public defender. The trial court remarked that a motion for a new trial had been filed in behalf of defendant Finley by the public defender. Defendant Finley told the court that he did not wish the public defender to represent him "because we can't seem to relate on anything else." On that date defendant filed a *pro se* "Motion In The Nature Of A New Trial And/Or Whatever The Court Deem Proper." The trial court then stated, "Is there a Chicago Bar Association attorney here? Will you contact them? I will appoint a C.B.A. attorney. That is as to Finley." The common law record also shows an order "that [a] Chicago Bar Attorney represent defendant." Defendant's *pro se* motion for a new trial states, "It is defendant's hope that this court would appoint the Cook County Bar to represent him on this motion at the time of hearing * * *."

The matter was next called on March 28, 1977. Defendant Finley appeared *pro se*. The trial court asked what effort he had made to get an attorney. Finley responded, "I was under the impression the court was going to manage it." The trial court then stated that there would be no more delays and proceeded to hear argument on the motions for new trial and then to pass sentence. A motion for new trial was argued by counsel for the codefendant Laney. Responding to an inquiry by the court, defendant Finley stated in effect that he wished to incorporate this argument into his own motion and told the court that he had nothing further to argue. Counsel for defendant Finley now claims that he was

deprived of his right to proper representation of counsel in connection with the hearing of the post-trial motion and sentence.

■■ It must first be recognized that the argument of the post-trial motion and the hearing on sentence are critical stages of a criminal proceeding in which the accused has a right to legal representation. (*Mempa v. Rhay* (1967), 389 U.S. 128, 19 L. Ed. 2d 336, 88 S. Ct. 254.) It appears to us that the trial court made every possible effort to protect this basic right of defendant Finley. In view of the affidavit of indigency, the trial court acted properly in designating the public defender to represent Finley. However, Finley carried the matter further and rejected the services of the public defender. It appears to us that this was not done for any real or substantial reason. The only reason given by Finley was his lack of being able "to relate" to the public defender. Under these circumstances there was no reason for the trial court to appoint any attorney for Finley other than the public defender.

The pertinent statute provides that the trial court may, "with the consent of the defendant and for good cause shown, appoint counsel other than the public defender, and shall so appoint if the defendant or accused shall demand and show good cause for that appointment, except as otherwise provided in Section 113—3 of the 'Code of Criminal Procedure of 1963'." Ill. Rev. Stat. 1975, ch. 34, par. 5604;[1] see *People v. Gardner* (1977), 47 Ill. App. 3d 529, 534-35, 362 N.E.2d 14; *People v. Drew* (1976), 36 Ill. App. 3d 807, 810, 345 N.E.2d 45; *People v. Johnson* (1974), 24 Ill. App. 3d 152, 159, 320 N.E.2d 69.

Upon consideration of the record before us and of the authorities above cited, we find no cause shown which would have required the trial court to appoint counsel other than the public defender. In *Gardner*, 47 Ill. App. 3d 529, 535, the defendant urged that the public defender was prejudiced against him. In *Drew*, 36 Ill. App. 3d 807, 810, defendant alleged that his "prior relations with public defenders have proven fruitless and frustrating." In *Johnson*, 24 Ill. App. 3d 152, 159, defendant alleged that the public defender was overworked and could not fulfil his obligations to defendant. Defendant Finley's argument is similar to these and is likewise properly rejected.

Our study of the record further convinces us that defendant Finley was not prejudiced in the slightest by the legal representation which he received in connection with the motion for new trial and in the imposition of sentence. The right to counsel at critical stages of a criminal proceeding is indeed important. The necessity for preservation of that right should not be underestimated. Defendant Finley as an indigent person had a

---

[1] This statute was amended by Public Act 80-846. The amendment took effect October 1, 1977, and therefore is not pertinent here.

right to have counsel appointed for him but he had "no right to select from or experiment with the counsel so appointed to the detriment of the orderly processes of law." *People v. Rivers* (1978), 61 Ill. App. 3d 376, 377 N.E.2d 1245; see also *People v. Leman* (1968), 95 Ill. App. 2d 212, 218, 238 N.E.2d 213, *appeal denied* (1968), 39 Ill. 2d 626.

Actually, there is no conflict presented in this record as regards Finley and Laney. The interests of both were common and, in our opinion, both were equally culpable. The motion for new trial prepared by defendant Finley shows him to be a person with a good degree of intelligence and some education. In our opinion, however, his *pro se* motion has no legal merit. We conclude that the trial court acted properly in denying the motions for new trial filed by both defendants. Furthermore, the sentences imposed by the trial court were well within the range of judicial discretion (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882), particularly in view of the background and police record of both of these defendants. In our opinion, both defendants received a fair trial. Their convictions and sentences are affirmed.

Judgments affirmed.

McGLOON and BUCKLEY, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Appellate counsel for defendant John Finley have petitioned for a rehearing. They repeat their contention that the rights of defendant Finley were violated in that he had no counsel during disposition of the post-trial motion and sentencing. Counsel also urge that this court seems to have found "considerable fault" with the defendant for simply making "this request for a change of counsel * * *." We will therefore amplify with greater detail the pertinent facts relating to this issue.

January 27, 1977—Jury verdict of guilty returned.

February 24, 1977—The trial court was advised of the death of privately retained counsel for defendant Finley. Public Defender James O'Regan tendered to the trial court an affidavit reflecting indigency of Finley. Defendant Finley told the court, "I would like a Public Defender to file a motion for a new trial." The court then suggested that Mr. O'Regan, or any other public defender, file an appearance for defendant Finley. Finley then reaffirmed to the trial court his desire that Mr. O'Regan handle his motion for new trial.

March 17, 1977—Defendant Finley advised the trial court that he had

prepared and wished to file his own motion for a new trial. He added that he was not "able to relate to the Public Defender in filing this motion for a new trial." The trial court noted that the public defender had already filed a motion for new trial in behalf of Finley. Defendant Finley repeated, "I really wouldn't like for the Public Defender to represent me because we can't seem to relate on anything else." Finley then asked the court to have his *pro se* motion "stamped filed." Colloquy then took place between the court and counsel regarding appointment of a bar association attorney for Finley as stated in the above opinion.

March 28, 1977—Mr. O'Regan asked the trial court "* * * am I representing Mr. Finley?" The trial court responded, "Speak for your own man." Mr. O'Regan then told the court that he had received a letter from co-defendant Laney requesting a bar association attorney. Co-defendant Laney affirmed that he wished to be represented by public defender O'Regan. Mr. O'Regan then argued the motion for new trial in behalf of co-defendant Laney. In response to an inquiry by the trial court, defendant Finley stated he had nothing more to say but affirmed that he would "incorporate" the same argument made in behalf of the codefendant. Finley also added that he had made the arguments in his motion for new trial and there was nothing else that he wished to say. Mr. O'Regan then stated to the trial court that defendant Finley was not represented by an attorney "and I don't believe that Mr. Finley has waived his right to counsel." The trial court then asked defendant Finley if he wished to incorporate this argument of Mr. O'Regan in his own favor. Finley refused and told the court once more, "I'm not represented by the Public Defender."

Both defendants affirmatively refrained from making any statement to the court concerning the presentence reports which both had seen. The State's Attorney made a short statement in aggravation. His statement regarding defendant Finley covers one-half of one page of the transcript. Mr. O'Regan then again told the court that defendant Finley was not represented by counsel. The court asked defendant Finley if there was anything that he cared to say. Finley replied negatively. After sentence, defendant Finley told the court, "At this time, I would like to make all the motions for appeal and ask for an I-Bond on appeal." The trial court denied this motion. Defendant Finley then stated, "I want the Public Defender to represent me on the appeal." Mr. O'Regan filed a notice of appeal in behalf of Finley. The following colloquy occurred:

> "THE COURT: Are you withdrawing your request for a Bar Association attorney?
> DEFENDANT FINLEY: On appeal, yes."

It is our opinion that the trial court would have had no justification to provide defendant Finley with any legal representation other than the

public defender. This conclusion is fortified by the authorities cited in our original opinion herein. The single remaining expedient was for defendant Finley to act *pro se*, as he did.

Upon this further analysis we reaffirm the conclusion reached in our opinion that the proceedings before the trial court were fair and that defendant Finley was not prejudiced by any action of the trial court.

The petition for rehearing is accordingly denied.

McGLOON and BUCKLEY, JJ., concur.