THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES MALONE, Defendant-Appellant.

First District (2nd Division)   No. 77-1358

Opinion filed December 5, 1978.

Ralph Ruebner and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Linda Dale Woloshin, and Thomas Bucaro, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant-Appellant Charles Malone was convicted of armed robbery pursuant to a jury trial. The trial court sentenced defendant to a term of 5 to 8 years in the Illinois Department of Corrections. Defendant appeals from this conviction raising for our review issues pertaining to: (1) prior misdemeanor convictions for theft, (2) evidence of unrelated crimes, (3) improper closing argument, and (4) the failure of prosecution to comply with rules of discovery.

On June 20, 1976, Richard Mitchell, the victim of the armed robbery, had been visiting his cousin at the El Continental Lounge before departing for his mother's residence at 559 East Browning, Chicago, Illinois. At 4:15 a.m. he had reached the lobby of his mother's building when Mitchell saw defendant standing by the lobby elevator. Mitchell observed defendant in this position under good lighting for a few minutes.

Mitchell and defendant entered the elevator and rode therein for two minutes until the elevator door opened at the third floor. Defendant positioned himself by the opened door and pointed a bag, containing a gun, at Mitchell. Mitchell was able to view the handle of the gun. Defendant demanded Mitchell's watch, stating, "Give it up brother, this is a stickup." Mitchell did not relinquish his watch at this time and, instead, gave defendant two $20 bills. Defendant again demanded the watch, took the watch, exited the elevator and told Mitchell to "move on."

Mitchell reached the seventh floor, exited the elevator and went into his mother's apartment. Mitchell obtained a butcher knife, departed from the building and unsuccessfully spent the next half-hour searching for defendant. Mitchell then returned to his mother's apartment and called the Chicago Police.

Officer Duhig arrived at the apartment and interviewed Mitchell. Mitchell described the culprit as 23 to 24 years of age, 5'9" to 5'10" tall, weighing 165 pounds, wearing a mustache with hair under the chin, a short Afro hair style, brown check pants and a pattern shirt.

On September 3, 1976, Mitchell observed defendant with a group of persons near Mitchell's mother's apartment. Mitchell located a marked police car and explained to the police officers that he had seen the man who robbed him. Mitchell entered the squad car and the officers and Mitchell drove to the location where Mitchell observed the defendant.

Mitchell identified defendant for the officers and then exited the squad car. Defendant commenced to run and was ordered to halt by the police. Defendant then ceased running and was arrested. We note that defendant was the only member of the group who fled upon arrival of the squad car.

At trial, defendant presented an alibi defense. He testified that on June 20, 1976, at 4 a.m. he was sleeping at the residence of his uncle and aunt. He testified that he could not have been out of the residence after 4 a.m. because he had no keys to the residence.

Defendant further testified that he did not satisfy the physical description of him provided by Mitchell. Defendant stated that he never weighed more than 138 lbs., never had facial hair but for a mustache, wore his hair in a "perm" (a straight hair style) and never had checked pants. Defendant also testified that he did not run from the police but merely moved out of the way of the approaching police car.

Several other witnesses testified on behalf of defendant. Defendant's aunt testified that defendant had no keys to her residence, had no check pants and wore a "perm" hair style (as opposed to an Afro) in June of 1976. Defendant's uncle testified that defendant wore a "perm" hair style in June of 1976. He further testified that he could not remember giving defendant the keys to the residence. Two of defendant's friends also testified that defendant wore a "perm" hair style in June of 1976.

The jury found defendant guilty of armed robbery and the trial court imposed a 5 to 8 year term of imprisonment upon defendant. It is from this conviction that defendant appeals.

Defendant argues that he was prejudiced by a forced admission concerning his prior residency in the County Jail. This admission arose from the following cross-examination:

"Q. Who gave you the hair style?

[Defense Counsel]: I object to that, Judge.

The Court: He may answer.

A. Well, I got the hair style in the County Jail.

Defendant contends that such testimony prejudiced him in the eyes of the jury and implies that the prosecution had an improper motive for asking the question.

■■ We do not agree with defendant's position. The prosecution inquiry sought the name of the person who administered the hair style to defendant. Defendant responded with a reference to the place in which he received the hair style. Defendant, having volunteered the information, is in no position to complain. *People v. Kirkwood* (1959), 17 Ill. 2d 23, 160 N.E.2d 766, *cert. denied* (1960), 363 U.S. 847, 4 L. Ed. 2d 1730, 80 S. Ct. 1623.

During the trial a photograph of defendant was admitted into evidence to impeach his statement that he had worn a "perm" hair style

during the day of the robbery, July and August. This photograph depicted defendant with a natural or Afro hair style on July 31, 1976, when he was arrested on another charge. The photograph was excised to limit any inference of the criminal nature of it and no testimony relative to the reasons for the taking of the photo was adduced.

The prosecution, during cross-examination of its witnesses, was apprised that the style of defendant's hair would be in issue as to identification. The resourceful prosecution then sought and obtained possession of the photograph that same evening and utilized it the next day in its cross-examination of defendant. Defendant conceded that the photograph correctly depicted his appearance on July 31, 1976.

Defendant contends that this use of the photograph by the prosecution constitutes a withholding of it contrary to the rules of discovery. Illinois Supreme Court Rule 412 (Ill. Rev. Stat. 1975, ch. 110A, par. 412) governs prosecution disclosures to the accused. Rule 412 provides, in relevant part, that:

> "(a) Except as is otherwise provided in these rules as to matters not subject to disclosure and protective orders, the State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:
>
> \* \* \*
>
> (v) any books, papers, documents, photographs or tangible objects which the prosecuting attorney intends to use in the hearing or trial or which were obtained from or belong to the accused;\* \* \* ."

Rule 412(a)(v) refers to photographs the use of which is intended for trial. The prosecution did not utilize this photograph of defendant until his defense strategy made the photograph relevant and material.

■■ We note that the record reflects no evidence of surprise on the part of the defendant after the photograph was offered for admission into evidence. Defendant did not request a continuance of the trial. We, therefore, believe that the trial court properly allowed the prosecution to introduce the photograph for the purpose of contradicting defendant's testimony and impeaching his credibility as a witness. *People v. Brown* (1976), 40 Ill. App. 3d 1003, 353 N.E.2d 244.

Defendant contends that his prior misdemeanor theft convictions could not be used for impeachment purposes pursuant to *Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 363 N.E.2d 805, and *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695. We agree with this contention.

In *Montgomery*, the Illinois Supreme Court adopted proposed

Federal Rule of Evidence 609 to govern the attempted impeachment of a witness through the use of that witness' prior convictions. Paragraph (a) of proposed Rule 609 states:

> "For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime, except on a plea of *nolo contendere*, is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice."

In *Knowles*, the Illinois Supreme Court stated that "[n]o longer is a distinction made between infamous crimes and misdemeanors for impeachment purposes in criminal cases. Any prior conviction, so long as it comports with paragraph (a) as well as with the other provisions set out in *Montgomery*, * * * , may be introduced." (66 Ill. 2d 585, 588.) Therefore, the issue before us relative to the prior misdemeanor theft convictions is whether these convictions "involved dishonesty."

This issue has been considered by the appellate courts of this State. Those courts have pronounced that the crime of theft is an offense which reflects adversely on a person's honesty and thus relates directly to his credibility. *People v. Rudolph* (1977), 50 Ill. App. 3d 559, 365 N.E.2d 930 (impeachment of defendant held proper). Accord, *People v. Thomas* (1978), 58 Ill. App. 3d 402, 374 N.E.2d 743 (trial court improperly disallowed impeachment of a witness); *People v. Ray* (1976), 36 Ill. App. 3d 283, 343 N.E.2d 560 (trial court properly held defendant subject to impeachment with prior theft conviction if defendant testified).

We, respectfully, do not follow the stance of these courts. A well reasoned dissenting opinion was filed in *People v. Rudolph* (1977), 50 Ill. App. 3d 559, 570, 365 N.E.2d 930, 940 (McGloon, J.), recently referred to with approval in *People v. Vaughn* (1978), 56 Ill. App. 3d 700, 371 N.E.2d 1248, and we believe that this dissent best explains why defendant's prior misdemeanor theft convictions should have been held inadmissible in the case at bar.

Since the Illinois Supreme Court, in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, adopted proposed Federal Rule of Evidence 609, we believe that the commentary to this rule is instructive. The Editorial Comment to Rule 609(a), reflecting the direct intent of the Rule's drafters, states:

> "The phrase 'dishonesty [or] false statement' denotes crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, of false pretense, or any other offense in the

nature of crimen falsi the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully. (28 USCS Appendix 66, Federal Rules of Evidence, Editorial Comment §609.1.)"

In Illinois, *crimen falsi* has been expressly defined by our supreme court in *Matzenbaugh v. People ex rel. Galloway* (1901), 194 Ill. 108, 113, 62 N.E. 546, 548:

"*Crimen falsi,* according to the better opinion, does not include all offenses which involve a charge of untruthfulness, but only such as injuriously affect the administration of public justice, such as perjury, subornation of perjury, suppression of testimony by bribery or conspiracy to procure the absence of a witness, or to accuse one wrongfully of a crime, or barratry, or the like."

Therefore, it is clear that the misdemeanor theft convictions admitted into evidence in the case at bar were not "dishonest crimes" as contemplated by Rule 609.

■■ We are of the opinion that the Editorial Comment to Rule 609, previously ignored in the majority opinions in *Rudolph, Thomas* and *Ray,* should be adopted as well as the Rule itself. Accordingly, we hold that defendant's prior misdemeanor theft convictions were not admissible under the standards set forth in *Montgomery* and *Knowles.*

Defendant argues that the prosecution presented a final argument which was so prejudicial that the trial court could not cure the prejudice by sustaining defense objections. Defendant specifically refers to the following portion of prosecution's final argument:

"Now, Ladies and Gentlemen, Mr. Charles Malone, the defendant in this cause, has asked for his trial. We have gone through a trial. He's raised his defense, and we have had to address ourselves to it, no matter what it is. And we have addressed ourselves to it.

He's had his trial by jury. Yes, he asks as he is presumed innocent, all defendants are presumed innocent, but at this point, Ladies and Gentlemen, he's been proven guilty. He's had his right. We have got our rights. We have our duty.

We have been patient with him. You have seen him make comments during testimony, put on a big act, hem and haw. He knows he is going away. *He's already had two convictions—*

Ms. Hillyard: Objection to—

The Court: I will sustain the objection, order the State's Attorney to desist from this line of argument." (Emphasis added.)

■■ We also note that prior to closing argument the prosecution read two certified statements of conviction into the record. The prosecution's final argument and the reading of these certified statements of conviction

placed undue emphasis upon defendant's prior convictions. In a close case such as the one at bar these prosecution tactics were greatly prejudicial.

Based upon the improperly admitted prior convictions for impeachment purposes and prosecution's over-emphasis of these convictions just prior to and during closing argument, defendant's conviction is reversed and remanded for a new trial.

Reversed and remanded.

DOWNING and BROWN[1], JJ., concur.

_____

[1] Justice Brown participated in this decision while assigned to the Illinois Appellate Court, First District.