THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JESSE RAMEY, Defendant-Appellant.

First District (5th Division)   No. 78-833

Opinion filed March 16, 1979.

Ralph Ruebner and Randy K. Johnson, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Francis X. Speh, Jr., and Michael R. Sherwin, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

In this appeal from an armed robbery conviction after a jury trial, the following issues are presented: (1) whether the trial court abused its discretion in denying defendant's motion in limine to prohibit the use, for impeachment purposes in the event defendant elected to testify, of two prior convictions for possession of a controlled substance; and (2) whether certain remarks made by the prosecutor in closing argument deprived defendant of a fair trial.

Defendant was charged by information with the armed robbery of a grocery store and, prior to trial, his attorney filed a motion in limine to preclude his impeachment on the basis of his prior convictions for burglary, criminal trespass, battery, and possession of a controlled substance. The trial judge reserved ruling but indicated that he would grant the motion as to the criminal trespass and battery charges. Our

examination of the record reveals, however, that no ruling was ever in fact made on the motion.

At trial, Martha Collins testified that she and her husband, Percy Collins, Jr., were the owners of a grocery store which was robbed in August 1976; that she was in the store with Percy Collins, Sr. (her father-in-law) and Bernice Richardson (a friend) when, at about 5:20 p.m., a man she later identified as defendant entered the store; that he was walking with a limp and accompanied by an unidentified woman; that Percy Collins, Sr., then left the store, following which defendant drew a pistol from under a tan jacket he was carrying, pointed it at Martha and said, "This is a hold-up"; that defendant searched her and removed a .32-caliber pistol from her smock; that during this time the woman accompanying defendant took some food stamps and approximately $10 to $15 in currency and change from the cash register; and that the woman then left the store, followed by defendant who walked backwards while still pointing the gun at her. She also said that immediately after this incident, Bernice Richardson "was sitting here in hysterics."

Martha additionally testified that about one week later, while driving in her car, she observed defendant and his female companion standing on a street corner about one block from the store; that she notified the police but no arrests were made at that time; that about three weeks later she again observed defendant in front of a pool hall and telephoned the police, and she told two officers who came to the store what she had seen; that the officers left but returned shortly thereafter with defendant who was wearing a tan jacket and walking with a limp; that she identified defendant as the robber; and that later she went to the police station accompanied by Bernice Richardson and signed a complaint against defendant. Martha's testimony concerning her identification of defendant was corroborated by the testimony of investigator John Schaefer, one of the arresting officers.

Defendant chose not to testify, and Bernice Richardson, who was the sole defense witness, testified that defendant was not the person who committed the robbery. On cross-examination she related that she saw defendant for the first time at the police station when she went there with Martha; that the robber had been accompanied by a 15- or 16-year-old boy—not a woman; that the robber wore blue jeans and a blue leather jacket and was not carrying a tan jacket on his arm; and that she did not notice anything unusual in the robber's manner of walking. When the prosecutor asked her address, she answered, "I'd rather not give my address because he already knows where I live at," and defense counsel's objection as to the relevancy of her exact street address was sustained. Later, the following exchange took place between her and the Assistant State's Attorney:

"Q. Were you crying [at the police station]?

A. No, I wasn't crying. I had asthma, because I didn't want to—I told her in the first place I didn't want to get involved identifying nobody.

Q. And you still don't want to get involved?

A. No. I wan't [*sic*] going to come down and pay nobody for no reason to come down, and for what?

Q. What?

A. I didn't have no way to get to court. I wasn't going to borrow no money to pay somebody to bring me down here. I said, 'For what?'

Q. Did you—

A. I'm a sick person, my asthma is bothering me now."

Bernice also testified that she told the police at the station that defendant "wasn't the one." However, on rebuttal, Officer Schaefer denied this, stating that Bernice said only that she was not sure whether defendant was the perpetrator. Schaefer also testified that Bernice "stated that she did not want the defendant to see her and [that] she did not really want to get involved in the case." Earlier, during the State's case-in-chief, Schaefer had testified that Bernice was "shaking and appeared to be crying" at the station.

OPINION

I.

Defendant first contends that the trial judge abused his discretion in denying the motion in limine to prohibit the use of two prior convictions for possession of a controlled substance to impeach him if he elected to testify. He argues that the danger of unfair prejudice which would have resulted had these convictions been admitted far outweighed their probative value as to his credibility.

Initially, we note that our examination of the record reveals that the trial court never ruled on defendant's motion. However, inasmuch as the State and defendant have treated this issue in their briefs as though the motion was in fact denied, we likewise shall proceed on that assumption.

■■ The types of prior convictions which may be properly used to impeach the testimony of a criminal defendant were set forth in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, where the court adopted the then-proposed Federal Evidence Rule 609, as follows:

"(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime, except on a plea of *nolo contendere*, is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved

dishonesty or false statement regardless of the punishment unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice." (47 Ill. 2d 510, 516, 268 N.E.2d 695, 698.)

In the instant case, defendant's prior convictions for possession of a controlled substance were felonies; thus, the trial court was required only to determine whether the probative value of their admission was "substantially outweighed by the danger of unfair prejudice." In making that assessment, it has been held that the following factors are to be considered: the nature of the prior crimes; the extent of defendant's criminal record; defendant's age; the likelihood that defendant will not testify if the motion in limine is denied; the nearness or remoteness of the prior convictions; defendant's subsequent activities; and whether the prior crimes are similar to those for which defendant is to be tried. *People v. Montgomery; People v. Dee* (1975), 26 Ill. App. 3d 691, 698, 325 N.E.2d 336, 341.

■■ In reviewing these factors as applied to the case at bar, we do not believe that the trial court abused its discretion in denying defendant's motion. Concerning the nature of the crime, we note that convictions for possession of a controlled substance have previously been held to be probative of credibility. In *People v. Nelson* (1975), 31 Ill. App. 3d 934, 335 N.E.2d 79, this court considered the question of whether a prior conviction for possession of heroin was so probative and held:

> "The offense of possession of heroin does indicate a disposition to place the advancement of individual self-interest ahead of principle or the interest of society, and such proof may suggest a willingness to do so again on the witness stand." (31 Ill. App. 3d 934, 938, 335 N.E.2d 79, 83.)

(See also *United States v. Davis* (9th Cir. 1974), 501 F.2d 1344; *United States v. Rucker* (8th Cir. 1974), 496 F.2d 1241; *United States v. McIntosh* (D.C. Cir. 1970), 138 U.S. App. D.C. 237, 426 F.2d 1231; *Durant v. United States* (D.C. App. 1972), 292 A.2d 157, *cert. denied* (1973), 409 U.S. 1127, 35 L. Ed. 2d 259, 93 S. Ct. 946.) Indeed, it appears reasonable to assume that an individual who obtains such substances does so by dishonest and evasive means, since their possession was in violation of the law.

■■ With respect to the remaining factors set forth in *Montgomery* and *Dee*, it appears that the possession convictions in 1974 and 1975 were not anomalous instances of criminal conduct which might have caused unfair prejudice, as his criminal record extended back to 1964 with subsequent convictions for various other offenses in 1969 and 1971. Neither does youth mitigate in his favor, as defendant was approximately 28 years old when first convicted of possession. We note also that the convictions were

not so remote as to lack probative value, as both were entered within four years of the instant trial and were in fact defendant's most recent convictions. Further, while the record concerning defendant's subsequent conduct discloses that he had not engaged in any criminal activity from the date of the last possession conviction until the date the instant charges were filed, we believe this to be of little significance, as defendant was imprisoned for much of that time. Finally, it is clear that the offense charged in the instant case—armed robbery—was not so similar to the possession convictions as to be unfairly prejudicial.

The only factor favoring defendant's position is the fact that he felt compelled not to testify in anticipation of these convictions being brought to the juror's attention and, as a result, his side of the story was never told. However, this factor alone does not lead us to conclude that the trial court abused its discretion, in view of the other circumstances set forth above which support the denial of the motion in limine.

■ Neither are we impressed by the assertion of defendant that because of the closeness of the evidence as to defendant's participation in the robbery, it was an abuse of discretion to deny his motion in limine. The motion was made prior to trial, and it is significant that the record does not indicate the court was advised at any time of the expected closeness of the evidence. Abuse of discretion results only when a court acts improperly on the facts known to it and not for the failure to take into consideration circumstances of which it was not apprised.

Further, we see no merit in defendant's argument that *People v. Wright* (1977), 51 Ill. App. 3d 461, 366 N.E.2d 1058, is supportive of his position. In *Wright,* defendant was charged with rape and deviate sexual assault and, after the trial court denied a defense motion in limine to bar the use of two prior aggravated battery convictions, defendant was cross-examined concerning these convictions. He was found guilty but, on appeal, this court reversed noting that a misdemeanor battery is not probative of credibility and that the only reason the two batteries in that case became aggravated, and thus presumably impeachable felonies, was "because in one case the offense occurred in a public place and in the other the victim was a policeman." (51 Ill. App. 3d 461, 464, 366 N.E.2d 1058, 1061.) The court accepted the argument "that the place where a battery occurs and the identity of the victim have absolutely nothing to do with defendant's credibility" (51 Ill. App. 3d 461, 465, 366 N.E.2d 1058, 1061-62) and, balancing this negligible probative value against the danger of unfair prejudice, it found the convictions should not have been admitted.

Defendant urges that the instant case is similar to *Wright* in that his prior convictions for possession of a controlled substance were rendered impeachable felonies only because of factors totally unrelated to

credibility—the amount and identity of the substance possessed—and that the negligible probative value of these convictions is far outweighed by the potential for unfair prejudice. We disagree, because unlike the battery convictions in *Wright*, the prior convictions for possession in the instant case are, as we discussed above, by their nature probative of credibility.

On oral argument, defendant also called our attention to the recent case of *People v. Malone* (1978), 67 Ill. App. 3d 150, 385 N.E.2d 12, asserting that it is indicative of a trend to narrow the use of prior convictions for impeachment. In *Malone*, the court considered the issue of whether misdemeanor theft convictions "involve dishonesty" so as to be admissible for impeachment purposes under *Montgomery*. The court noted that the editorial comments to proposed Federal Rule of Evidence 609(a), adopted in *Montgomery*, provide that the phrase "dishonesty and false statement" in the rule denotes crimes such as perjury, fraud, embezzlement, false pretenses, or other offenses in the nature of *crimen falsi*. In the light thereof, the *Malone* court reasoned that theft does not fall within the scope of such offenses. Accordingly, it held that prior misdemeanor theft convictions are inadmissible for impeachment purposes and, in so doing, refused to follow prior cases which allowed such impeachment. See, *e.g.*, *People v. Thomas* (1978), 58 Ill. App. 3d 402, 374 N.E.2d 743; *People v. Rudolph* (1977), 50 Ill. App. 3d 559, 365 N.E.2d 930.

■■ Whether or not the *Malone* reasoning will eventually be upheld is of little significance under the facts here, as in that case the prior convictions were misdemeanors and, thus, under *Montgomery* an independent showing that they involved dishonesty or false statement was required. In the instant case, however, because the prior convictions were felonies, the only relevant inquiry is whether their probative value is substantially outweighed by the danger of unfair prejudice since, under the rule in *Montgomery*, felonies are presumed to be probative of credibility.

We therefore hold that the trial court did not abuse its discretion in denying defendant's motion in limine.

## II.

■■ Defendant next contends that certain statements made by the prosecutor during the State's rebuttal in closing arguments denied him a fair trial. Initially we note, and defendant admits, that no objection was made at trial to any of the statements now asserted as error. He urges, however, that these remarks are nonetheless reviewable as plain error under Supreme Court Rule 615(a). (Ill. Rev. Stat. 1977, ch. 110A, par. 615(a).) Since we agree that a statement which is so improper as to affect defendant's right to a fair trial would constitute plain error (*People v.*

*Hopkins* (1970), 124 Ill. App. 2d 415, 259 N.E.2d 577; *People v. Smith* (1966), 74 Ill. App. 2d 458, 221 N.E.2d 68), we will consider defendant's contentions.

Defendant first directs us to the following statement of the prosecutor:

> "I think when you look at Martha Collins, she was a person telling the truth, telling the truth to you in the best way that she could express it."

He argues that this remark was improper because a prosecutor cannot "state his personal belief in the * * * truth of his own case." We view this argument to be untenable, as the remark concerned the credibility of a State's witness—which is a proper subject of comment by the prosecutor. *People v. Franklin* (1978), 64 Ill. App. 3d 400, 380 N.E.2d 1082; *People v. Martinez* (1977), 45 Ill. App. 3d 939, 360 N.E.2d 495; *People v. Oden* (1975), 26 Ill. App. 3d 613, 325 N.E.2d 446.

■■ The cases cited by defendant do not support his position. In *People v. Bitakis* (1972), 8 Ill. App. 3d 103, 289 N.E.2d 256, the following statement made by the prosecutor during closing argument was held to be reversible error:

> " 'Mrs. Perry and what she told the police was no where [*sic*] in the police report. I am not ready to jeopardize my reputation by putting a false witness on that stand. If I thought the Lalagos family put her up to testifying she would not have hit that stand because it is not worth it to me.' " (8 Ill. App. 3d 103, 106, 289 N.E.2d 256, 258.)

Defendant asserts that the statement made by the prosecutor in the instant case was so similar to that made in *Bitakis* that we should likewise reverse the conviction. We disagree. In *Bitakis* the court found those remarks to be improper, because the prosecutor argued that "his personal and official prestige warranted the truthfulness of the People's witnesses or he would not have called them," (8 Ill. App. 3d 103, 106, 289 N.E.2d 256, 258); whereas, in the instant case, there is no indication or allegation that the prosecutor attempted to bolster the credibility of Martha Collins in this manner.

In *People v. Martin* (1975), 29 Ill. App. 3d 825, 331 N.E.2d 311, error was found in the following remark:

> " 'He [Parker] was called, you will remember, not as a State's witness because the State, I believe with reasonable inference here, is that before the State could put anyone on as a witness we have to vouch for their credibility. We have to believe in what they would say. There is no way we could possibly believe in what a person like that would say.' " (29 Ill. App. 3d 825, 830, 331 N.E.2d 311, 315.)

We do not believe *Martin* to be applicable here, however, because that court found error on the basis that the rule in *Bitakis* was violated, noting:

"It is clear that the prosecutor inferentially or by way of innuendo attests [*sic*] to the truth and veracity of his witness, the policeman, by arguing that the defendant's witness [Parker] was such a despicable character that he could not vouch for his credibility and, therefore, did not call him." (29 Ill. App. 3d 825, 830-31, 331 N.E.2d 311, 315.)

As noted above, the prosecutor in the instant case made no attempt to relate the credibility of any witness to his own personal or professional integrity.

■■■ Defendant next objects to the following statements subsequently made by the prosecutor:

"And I'm saying Bernice Richardson was a liar. Bernice Richardson came up here, she was afraid. She was afraid in the police station for some reason. I don't know. She was afraid when she came up here and testified before you, ladies and gentlemen. * * * I think that when she testified here today she was scared. I think that is a reasonable inference from the evidence. I think that listening to her whole testimony, her whole demeanor, that that is the only conclusion."

Defendant posits that these remarks improperly attacked the credibility of Bernice Richardson, the sole defense witness. We do not agree. It is clear that a prosecutor may call a witness false during closing arguments if this conclusion is based on the evidence or reasonable inferences drawn from it. (*People v. Owens* (1977), 46 Ill. App. 3d 978, 994, 361 N.E.2d 644, 656; *People v. Castillo* (1970), 130 Ill. App. 2d 387, 264 N.E.2d 516.) A prosecutor may even refer to a witness as a "liar" if there exists evidentiary support for that characterization. (*People v. Ross* (1978), 60 Ill. App. 3d 857, 864, 377 N.E.2d 230, 236.) In the case at bar, the prosecutor's comment that Bernice Richardson was not truthful because she was afraid draws support from her own testimony as set forth above—that she did not wish to get involved—as well as from her demeanor while testifying and from Schaefer's testimony that "[s]he was shaking and appeared to be crying" at the police station. Furthermore, we feel that these remarks were a reasonable response to defense counsel's assertion in closing argument that "Mrs. Richardson * * * was not prejudiced like Mrs. Collins"; thus, "defendant cannot [now] complain of the comments which he himself precipitated." *People v. Barksdale* (1974), 24 Ill. App. 3d 489, 503, 321 N.E.2d 489, 499. See also *People v. Ross.*

Defendant, however, calls our attention to *People v. Richardson* (1977), 49 Ill. App. 3d 170, 363 N.E.2d 924, where the following statement by the prosecutor was held to constitute error:

" 'First of all, concerning the defendant's witness, you have to remember that they don't live in the same social structure that we do, that you and I do. The witnesses that the defendant brought are street people—simple as that. The society they live in do not consider truth a great virtue. The society they live in, they lie every day. It is nothing to them to protect one of their own kind by lying.

          * * *

I think they are lying.' " (49 Ill. App. 3d 170, 172-73, 363 N.E.2d 924, 926.)

Defendant argues that the similarity of these comments to those in the instant case requires reversal. We see no merit in this argument. The *Richardson* court reversed a black defendant's conviction because a great deal of the prosecutor's closing argument, of which the above segment is one of the least ominous, was a calculated appeal to racial prejudice. In the instant case, however, the prosecutor made no such allusions to race and, as pointed out above, the comments of the prosecutor were not otherwise improper.

Defendant lastly complains of the following statement made by the prosecutor:

> "I submit that the evidence shows he is guilty and should be punished for this crime."

It is contended that this remark is also improper as an expression of the prosecutor's belief of defendant's guilt. We note, however, that it is proper for a prosecutor to argue or express his opinion that the accused is guilty where he states or it is apparent that such opinion is based solely on the evidence. (*People v. Jackson* (1966), 35 Ill. 2d 162, 171, 220 N.E.2d 229, 235, *cert. denied* (1978), 393 U.S. 942, 21 L. Ed. 2d 279, 89 S. Ct. 309; *People v. Williams* (1962), 26 Ill. 2d 190, 193, 186 N.E.2d 353, 355; *People v. Sheridan* (1978), 57 Ill. App. 3d 765, 773, 373 N.E.2d 669, 674; *People v. Owens* (1977), 46 Ill. App. 3d 978, 994, 361 N.E.2d 644, 656.) Since in the case at bar the prosecutor expressly stated that his assertion of defendant's guilt was based on the evidence, we find it was not improper.

Accordingly, we conclude that the prosecutorial statements complained of did not deny defendant a fair trial.

For the reasons stated above, the judgment of the trial court is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.