(No. 51628.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. CHARLES MALONE, Appellee.

*Opinion filed December 3, 1979.*

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B. Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and Marcia B. Orr, Iris E. Shoulder, and Joel A. Eisen-Stein, Assistant State's Attorneys, of counsel), for the People.

Ralph Ruebner and Gordon Berry, Deputy Defenders, of Chicago, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

After a jury trial in the circuit court of Cook County, the defendant, Charles Malone, was convicted of armed robbery. The appellate court reversed and remanded for a new trial (67 Ill. App. 3d 150), holding that defendant's prior convictions for misdemeanor theft were not admissible to impeach his credibility. We granted the State leave to appeal.

Richard Mitchell, the victim of the armed robbery, testified, in pertinent part, as follows. At 4:15 a.m., on June 20, 1976, Mitchell entered the lobby of a residential building at 559 East Browning, in Chicago. He saw the defendant, already present in the lobby, push the button to summon the elevator. The elevator (which was illuminated by two light bulbs) arrived and the two embarked, Mitchell to go to his mother's apartment on the seventh floor. Defendant pushed the third-floor button. The elevator stopped at the latter floor and, after the doors opened, defendant held them open with his foot, pointed an object covered with a bag at Mitchell, and said, "Give it up, brother, this is a stick up." Mitchell handed defendant $40 he had in his pocket. Upon defendant's further demand, and after observing the handle of a gun, exposed when defendant partially removed the bag, Mitchell gave his wristwatch to the defendant. Defendant exited, allowing the elevator doors to close. The elevator carried Mitchell to the seventh floor, where he entered his mother's apartment, armed himself with a butcher knife, and left to search the neighborhood for the defendant. After an hour of fruitless search, Mitchell returned to the apartment to await his mother, who arrived at approximately 10:30 a.m. Shortly thereafter, he called the police and subsequently gave the details of the incident and a description of the defendant to the attending officer, Duhig, who testified in corroboration. (On cross-examina-

tion, Mitchell stated that the description he gave the police included the fact that the offender had an Afro, or "natural," hairstyle.)

Mitchell further testified that, in the late afternoon of September 3, 1976, as he drove in the neighborhood of his mother's apartment, he saw the defendant standing with several other people. Mitchell summoned a nearby police car and told the two patrol officers that he had just seen the man who had earlier robbed him. He got into the police car and directed the officers to the place where defendant stood. The driver stopped the car near the group. After Mitchell got out of the police car, the defendant saw him and started to run, but halted when the officers ordered him to do so. Defendant was the only member of the group who attempted to run. Mitchell's testimony in this regard was corroborated by Officer Triche, who, with Officer Montgomery, had manned the patrol car which Mitchell approached that afternoon.

For the defense, defendant's aunt and uncle both testified that defendant, who had lived with them during the summer of 1976, had a "perm," or straightened, hairstyle during that time. Lloyd Moore and Ralph Love, friends of the defendant, also testified that defendant had a "perm" hairstyle during that summer.

Defendant took the stand and testified that, at the time of the alleged robbery, he was asleep at the home of his aunt and uncle, about 3½ blocks from the scene of the incident. He also stated that during that summer, including the day of June 20, he had a "perm" hairstyle. When cross-examined as to why he ran when Mitchell and the police officers exited the police car on September 3, 1976, defendant stated he had not run, but had merely taken two steps to avoid being hit by the police car.

As part of the State's rebuttal, certified copies of two of defendant's prior convictions for misdemeanor theft were read into the record to impeach defendant's credi-

bility. One of the convictions had been entered on March 15, 1974, and the other on December 23, 1974.

The appellate court held the evidence of these convictions inadmissible because of its belief that, under *People v. Montgomery* (1971), 47 Ill. 2d 510, misdemeanor theft is not a crime involving dishonesty. (67 Ill. App. 3d 150, 153-55.) Since the date of the appellate court opinion, however, this court has considered precisely the same issue in *People v. Spates* (1979), 77 Ill. 2d 193. There, the court held that theft is a crime involving dishonesty or false statement. (77 Ill. 2d 193, 202-03.) We therefore find the appellate court's resolution of that issue in error.

*Montgomery's* holding renders prior convictions inadmissible when the judge determines that the probative value of the evidence of the crime is outweighed by its prejudicial effect. In *Spates*, we stressed that this determination involves the exercise of discretion on the part of the trial judge. (77 Ill. 2d 193, 204-05. See also *People v. Ray* (1973), 54 Ill. 2d 377, 380-83.) In the case at bar, defendant made a motion *in limine* to prohibit the introduction of any of his prior convictions. The State responded by disclosing its intention to introduce four prior convictions of defendant, but the trial judge limited the State to two of the four convictions.

Defendant does not contend that the trial judge abused his discretion at the time of that ruling. Rather, defendant argues that introduction of prior convictions was unnecessary and denied him a fair trial because, prior to their introduction, other evidence introduced had the same impeaching effect as the introduction of prior convictions. Specifically, defendant points to two instances wherein the jury was allegedly exposed to such evidence. First, during cross-examination of defendant, when asked, "Who gave you that hairstyle?", defendant responded, "Well, I got the hairstyle in the County Jail."

Second, as part of the State's rebuttal, police officer Fashingbauer was called to describe defendant's appearance on July 31, 1976, and to identify a photograph taken of defendant on that date. The photograph depicted defendant with a "natural," rather than a "perm," hairstyle. This testimony contradicted the earlier defense testimony regarding defendant's appearance at the time in question.

Defendant does not contend that such evidence was inadmissible. Instead, he argues that, because this testimony effectively exposed his prior encounters with legal authorities, evidence of his prior convictions was inadmissible. We note, additionally, that, at trial, defendant did not object on this basis to the subsequent introduction of prior convictions. We deem defendant's contention to be without merit and conclude that the trial judge did not err in exercising his discretion by allowing the introduction of the two prior convictions.

Also, defendant contends that he was denied a fair trial by a damaging "trial within a trial" regarding the prior misdemeanor theft convictions, by the reading of the two convictions, and by the improper closing argument of the prosecutor.

The two prior misdemeanor theft convictions which the State intended to use to impeach defendant's credibility were in names other than that of Charles Malone. The trial judge refused to allow the State to use them unless either the defendant stipulated that he was the person convicted in the prior proceedings or the State proved it. Defendant refused to so stipulate. The State thereafter proceeded, over objection, to present identification evidence. Specifically, the State called the arresting officers in each of the prior proceedings and a patrolman technician from the Chicago Police Department Identification Section. The arresting officers both testified that defendant was the same person whom the officers had

arrested and fingerprinted in the prior cases. The patrolman technician testified that the fingerprints taken in each of the prior cases matched each other and that both, in turn, matched the fingerprints taken of the defendant in the instant proceeding. Defendant argues that this testimony constituted a "trial within a trial" which caused the jury to focus its attention on the prior convictions. In support thereof, defendant cites *People v. DeHoyos* (1976), 64 Ill. 2d 128, and *People v. Madison* (1974), 56 Ill. 2d 476, wherein this court denounced the introduction of excess evidence of prior convictions for impeachment purposes. In *DeHoyos,* it was held error to impeach a witness with evidence concerning a prior conviction by any means other than by proof of the conviction itself. (64 Ill. 2d 128, 131-33.) In *Madison,* the court reiterated the rule that impeachment of the defendant should be by means of the record of conviction or an authenticated copy and not additionally by cross-examination. (*People v. Madison* (1974), 56 Ill. 2d 476, 488; *People v. McCrimmon* (1967), 37 Ill. 2d 40, 45, *cert denied* (1967), 389 U.S. 863, 19 L. Ed. 2d 131, 88 S. Ct. 120. But see *People v. Davis* (1976), 65 Ill. 2d 157, 164.) In these cases, however, unlike the case at bar, identification was not an issue. Although proof of prior convictions for impeachment purposes need not be made beyond a reasonable doubt (*People v. Stewart* (1961), 23 Ill. 2d 161, 164; *People v. Buford* (1947), 396 Ill. 158, 161), such proof includes identification of the defendant as the same person convicted in the previous case (*People v. Davis* (1976), 65 Ill. 2d 157, 164). Inasmuch as, here, the names were different on the prior convictions and defendant refused to stipulate that he was the same person, the State was required to prove that defendant was, in fact, the same person as was convicted earlier.

Defendant further argues that the testimony of the police officers should have been given *in camera* and, if the

trial judge determined that identity was established, then read back to the jury. In this regard, we note the general rule that when the admissibility of evidence depends upon an incidental question of fact, such question is for the judge, rather than the jury, to resolve. (*Hoch v. People* (1905), 219 Ill. 265, 279; McCormick, Evidence sec. 53 (2d ed. 1972); Maguire & Epstein, *Preliminary Questions of Fact in Determining the Admissibility of Evidence*, 40 Harv. L. Rev. 392 (1927).) The admissibility of the prior convictions in this case depended upon whether defendant was the person convicted of the earlier crimes, a question of fact. Because the prior convictions were in names other than that of Charles Malone, absent a stipulation, the court had to have evidence before it to establish that the persons named were one and the same. While it may have been preferable, as defendant suggests, for the judge to take this evidence *in camera,* we find no reversible error here, where the singularity of identities was clearly established and where the State was permitted to elicit only such testimony as was necessary to establish identity. Moreover, the jury was instructed that evidence of defendant's previous convictions was to be considered only insofar as it may have affected his credibility, and not as evidence of guilt of the crime charged.

Defendant's challenge to the reading of the two conviction statements is not well taken in that, as noted earlier, this is the proper method by which a defendant's credibility may be impeached with a prior conviction.

Finally, we have reviewed the record in connection with defendant's argument that the prosecutor made an improper closing argument. We find that the complained-of comments were either proper comment on the evidence or proper rebuttal, or that objections were made and properly sustained, resulting in no substantial prejudice to the defendant.

For the foregoing reasons, the judgment of the

appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*