**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 240711-U

Order filed June 16, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0711 Circuit No. 24-DV-428 |
| | ) | |
| JOSUE REYES, | ) ) | Honorable Christine T. Cody, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BERTANI delivered the judgment of the court.
Justices Brennan and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    The prosecutor did not make any misrepresentations to the court regarding the service of a subpoena and did not commit error when it called a witness a liar; the evidence was sufficient to prove defendant guilty of domestic battery.

¶ 2    Defendant, Josue Reyes, appeals his conviction of two counts of domestic battery, arguing that the State failed to prove the charges against him beyond a reasonable doubt. He also argues that the prosecutor misrepresented to the court that the victim was served a subpoena and by using

language to demonstrate animosity toward her which caused the court to become biased against her. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged defendant with two misdemeanor counts of domestic battery. 720 ILCS 5/12-3.2(a)(1), (2) (West 2024). It later filed a superseding information charging him with four counts of domestic battery. *Id.* Two counts alleged contact causing bodily harm, and two alleged contact of an insulting and provoking nature.

¶ 5        At the time defendant appeared in court for trial, his attorney moved for a continuance so that the victim could appear as she was unable to do so that day. The State responded that the neighbor was present in court and that he had spoken with the victim over the phone. Specifically, the State told the court,

> "Your Honor, we did have the neighbor personally served, and we attempted to have the victim in this matter personally served. When I did call the victim a few days ago, she did indicate to me that she knew that she was served, she was going to be uncooperative, and that she was not going to be coming to court."

¶ 6        The court denied defendant's motion. Defendant's counsel stated he was not ready for trial. The court reconvened that afternoon, and defendant requested a jury trial. The court continued the trial to the following week so that a jury could be summoned. Defendant appeared for trial the next week with his counsel and another attorney who filed his appearance as co-counsel. After discussing jury instructions, defendant requested to waive his right to a jury trial and to proceed with a bench trial. The court allowed the waiver, and the matter proceeded to a bench trial that day.

2

¶ 7        The State first called Salvatore Degrazio who testified that he lived across the street from defendant and the alleged victim, Joanna Witte. On April 5, 2024, at approximately 8:20 p.m., Degrazio heard someone screaming. He was in his garage at the time when he looked outside and saw a male on top of a female in defendant's driveway. Degrazio identified the male as defendant and the female as Witte. Witte was lying on the ground on her side and defendant was "flailing his arms around like hitting her." He observed defendant make contact with Witte's midsection.

¶ 8        Degrazio ran to the street and yelled for defendant to stop. Defendant grabbed Witte by her hair as if dragging her to the door inside their open garage. Degrazio stated he still heard screaming for about five minutes after they closed the garage door. He went inside his home and told his wife to call 911. While it was dark outside at the time, Degrazio stated he could see what was happening because defendant's garage light was on and provided sufficient lighting.

¶ 9        Degrazio spoke with the officers when they arrived and told them what he saw. After the officers left, Degrazio spoke with Witte who seemed emotional. He observed a mark on the right side of her face and noticed that her clothes were dirty.

¶ 10       The State next called Sergeant Danne Pope who testified that he responded to a domestic call at defendant's residence on April 24, 2024. Other officers were present at the time he arrived and were at the front door attempting to get someone to come outside to speak with them. Witte eventually exited the house. Pope testified that her demeanor was "closed off," and he could tell that she had been crying. She had some blood on her left hand and a bruised left eye. Pope identified several photos taken of Witte from his body camera showing her injuries which were admitted into evidence.

¶ 11       The State rested, and defendant orally moved for a directed verdict, which the court denied.

3

¶ 12 Defendant's only witness was Witte who testified that she was married to defendant and identified him in court. Both were in the Marine Corps and had been married for four years. On the evening of April 4, 2024, she and defendant got into an argument and were yelling at each other in the driveway. She fell down in the driveway, and defendant helped her get up and into the garage. She stated that she had just tripped and that defendant did not contribute to her fall. She might have gotten a scratch on her hand from the fall, and any marks on her face were likely from rubbing her face when she was crying. She did not feel insulted or provoked by any contact with defendant that evening.

¶ 13 Without objection, the State asked on cross examination if she had lied to his office that she could not make it to court on the first trial date but did end up appearing on that day. She stated, "I don't know if I'd call it lying," but admitted that she told the State she could not make it to court and that she did not intend to appear in court when she spoke with the State's Attorney's office. The State then asked if she or defendant would lose benefits through the marines if either were dishonorably discharged. She stated that while defendant could lose his benefits if he was convicted, she would not lose any because she had her own benefits that would not be affected.

¶ 14 The State emphasized during its closing that Pope and Degrazio were credible witnesses and provided credible testimony. He questioned Witte's credibility. Specifically, he stated:

> "She told the State last Thursday that she wouldn't be able to make it, but then magically two hours later when we were answering ready for trial, she appeared in the courtroom. It's very clear that this is not a credible witness, and it's very clear that she's lying to protect the defendant."

¶ 15 Defendant argued that the State had failed to meet its burden of proof in this case because Degrazio's testimony was not credible. Degrazio was across the street when he heard screaming,

4

and defendant's driveway was not well lit. Witte testified that defendant did not hit her, and defendant argued she had no reason to lie and did not have anything to gain from doing so. She had her own benefits from the military and was not reliant on defendant's benefits that he could lose if convicted.

¶ 16      The State questioned Witte's credibility in rebuttal by saying, "She told the State's Attorneys that she could not make it here, yet she was here last Thursday. She was sitting right here in the gallery. She testified to it. She's a liar." The State also argued, "She has every reason to lie," because she would lose access to her husband's military benefits if her husband was dishonorably discharged.

¶ 17      The court found defendant guilty of the two counts of domestic battery which alleged defendant made physical contact of an insulting or provoking nature with Witte. One count was based upon striking her about the body and the other for grabbing her and dragging her across the driveway. However, it found defendant not guilty of the two charges alleging bodily harm because it did not see any blood in the photographs admitted into evidence. Rather, it found that the contact defendant made when striking her and dragging her into the house was of an insulting and provoking nature based upon Degrazio's testimony.

¶ 18      The court explained that it found Degrazio to be a credible witness due to his consistent testimony. As for Witte's testimony, the court found that she was not credible in part due to her demeanor while testifying. The court stated it would be difficult to find that she did not have an interest in the outcome of the trial given her emotional and financial attachments to defendant. It found her testimony that she would trip over her shoes causing her to scream unbelievable considering she was in the marines. Specifically, it stated "I don't believe that the men and women who make up our marines would be screaming to that extent over tripping on their shoe." It further

5

stated, "I'm very disappointed by the lack of honesty from [Witte], and I'm disappointed in what I find the facts have proven beyond a reasonable doubt by both of these marines."

¶ 19    The court denied defendant's motions for a new trial and to reconsider and sentenced defendant to one year of conditional discharge. This appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21                            A. The Prosecutor's Statements

¶ 22    Defendant first argues that the prosecutor's comments regarding Witte's credibility misrepresented the situation, demonstrated general animosity toward her, and amounted to error which deprived him of a fair trial. Specifically, defendant contends that the State misrepresented that Witte was served a State subpoena when she had not received it and the general statements calling Witte a liar caused the court to be prejudiced against him.

¶ 23    Initially, we note that no objection was made at trial to any of the statements defendant now asserts as error. Instead, defendant argues we should still review this issue under the plain error rule. The plain error rule is a narrow and limited exception to the general rules of forfeiture. *People v. Herron*, 215 Ill. 2d 167, 177 (2005). It allows this court to consider unpreserved error when "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007) (citing *Herron*, 215 Ill. 2d at 186-87). We may also review those errors that demonstrate "a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.* Under either circumstance, the burden of persuasion rests with the defendant. *Herron*, 215 Ill. 2d at 187 (citing *People v. Hopp*, 209 Ill. 2d 1, 12 (2004)).

6

¶ 24    Currently, there is a conflict among Illinois Supreme Court cases regarding the standard of review for remarks made by a prosecutor during closing argument. In *People v. Wheeler*, 226 Ill. 2d 92, 121 (2007), and *People v. Sims*, 192 Ill. 2d 592, 615 (2000), our supreme court suggested we review these questions *de novo* because the prosecutor's statements are reflected in the transcripts and thus undisputed, leaving only a legal question. In contrast, *People v. Hudson*, 157 Ill. 2d 401, 441 (1993), suggests that the appropriate standard of review is abuse of discretion. We need not take a position in this case, as defendant's claims fail under either standard. See *People v. Johnson*, 385 Ill. App. 3d 585, 603 (2008) ("[W]e do not need to resolve the issue of the appropriate standard of review at this time, because our holding in this case would be the same under either standard.").

¶ 25    Defendant first directs us to the following statement from the prosecutor, which he made the first time the matter was called for trial and before the circuit court denied defendant's motion to continue the trial:

> "Your Honor, we did have the neighbor personally served, and we attempted to have the victim in this matter personally served. When I did call the victim a few days ago, she did indicate to me that she knew that she was served, she was going to be uncooperative, and that she was not going to be coming to court."

Defendant finds error in this statement for two reasons. First, he argues that the prosecutor misrepresented to the court that Witte had been served with a subpoena when she had not. A complete reading of the State's representations to the court, however, does not lead us to the conclusion that it misrepresented to the court that Witte had been served. The prosecutor stated that the neighbor had been served and the State "attempted to have the victim in this matter personally served." It is clear from this statement that Witte had not been served by the State;

7

otherwise, the prosecutor would have indicated that she had been served as he did when referring to Degrazio. Next, the prosecutor stated that when speaking to Witte, "she did indicate to me that she knew that she was served." This statement does not indicate, as defendant posits, that she was actually served. The State merely relayed to the court what Witte said. We see no misrepresentation in this statement.

¶ 26    Next, defendant takes issue with the State's characterization of Witte as "uncooperative." He argues that the State's conclusion that Witte was uncooperative was an unfair assumption that showed prejudicial animosity toward her and contributed to the court's decision to deny defendant's motion to continue.

¶ 27    We find no merit in defendant's argument regarding the State's characterization of Witte's willingness to cooperate and note that the State's categorization of Witte's level of cooperation is an accurate description based on the information relayed to the court. The State relayed her statements that she knew the prosecutor wanted her to testify, that she knew when court would be, and that she would not be there. Refusing to come to court is a clear indication that Witte was uncooperative with the State. Moreover, defendant provides no case law to support his position that offering such a statement is inappropriate. Accordingly, we find no error on the part of the State.

¶ 28    Finally, defendant argues that the prosecutor's statements regarding Witte's credibility were in error. Specifically, he points to the statements during closing arguments where the prosecutor said the following about Witte's testimony:

> "She told the State last Thursday that she wouldn't be able to make it, but then magically two hours later when we were answering ready for trial, she appeared in

8

the courtroom. It's very clear that this is not a credible witness, and it's very clear that she's lying to protect the defendant."

Defendant also takes issue with the State's rebuttal where the prosecutor stated:

"Now, are we supposed to believe Ms. Witte's testimony? She got up here and she impeached herself. She told you that she told the State's Attorneys that she could not make it here, yet she was here last Thursday. She was sitting right here in the gallery. She testified to it. She is a liar."

¶ 29 A prosecutor is generally given a wide latitude during closing argument. "[I]t is entirely proper for the prosecutor, during closing argument, to comment on the evidence offered at trial and to draw legitimate inferences from the evidence, even if those inferences are detrimental to the defendant." *People v. Desantiago*, 365 Ill. App. 3d 855, 866 (2006). "While a prosecutor may not make arguments or assumptions that have no basis in evidence, improper comments or remarks are not reversible error unless they are a material factor in the conviction or cause substantial prejudice to the accused." *People v. Sutton*, 353 Ill. App. 3d 487, 498 (2004).

¶ 30 Defendant posits that the remarks improperly attacked the credibility of his sole witness. We do not agree. "It is clear that a prosecutor may call a witness false during closing arguments if this conclusion is based on the evidence or reasonable inferences drawn from it." *People v. Ramey*, 70 Ill. App. 3d 327, 336 (1979). The State may even call that witness a liar if there is evidentiary support for it. *Id.*

¶ 31 Here, the prosecutor's statements calling Witte a liar is supported by her testimony and actions. Witte admitted that she told the State she could not come to court. After informing the State of this, however, she appeared in court on defendant's behalf. The State highlighted this

testimony to support its argument that Witte lacked credibility. While Witte never admitted that she lied, the statements she made clearly indicate that she did.

¶ 32    Defendant argues that these statements led the court to make determinations regarding Witte's testimony and credibility due to the State's animosity toward her, thereby prejudicing defendant. However, the court's findings regarding her credibility were not based upon that testimony. Rather, it found her not credible because it did not believe that tripping over her shoe would cause her to scream in the manner in which Degrazio testified and she admitted when she fell in the driveway. The court also found incredible her assertion that she had no interest in the outcome of the trial in spite of her financial and emotional connections to defendant. The court also questioned her demeanor while testifying. There is nothing in the record to support the notion that the court took the State's comments into account when making its findings.

¶ 33    Accordingly, we find the State did not make any improper comments during this proceeding. It did not misrepresent any information to the court and merely relayed the contents of a conversation that occurred between it and Witte. Additionally, its characterization of Witte as "uncooperative" and "a liar" is supported by the evidence and was not improper.

¶ 34                                    B. Sufficiency of the Evidence

¶ 35    Defendant also argues that the State did not prove him guilty beyond a reasonable doubt. In a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). All reasonable inferences in favor of the State are allowed but unreasonable or speculative inferences are not permissible. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). In making this

10

determination, we review the evidence in the light most favorable to the prosecution. *People v. Baskerville*, 2012 IL 111056, ¶ 31.

¶ 36    It is not the purpose of a reviewing court to retry a defendant. *People v. Milka*, 211 Ill. 2d 150, 178 (2004). Instead, great deference is given to the trier of fact. See, *e.g.*, *People v. Saxon*, 374 Ill. App. 3d 409, 416-17 (2007). All reasonable inferences from the record in favor of the prosecution will be allowed. *People v. Bush*, 214 Ill. 2d 318, 326 (2005). " 'Where evidence is presented and such evidence is capable of producing conflicting inferences, it is best left to the trier of fact for proper resolution.' " *Saxon*, 374 Ill. App. 3d at 416 (quoting *People v. McDonald*, 168 Ill. 2d 420, 447 (1995)). "A conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Belknap*, 2014 IL 117094, ¶ 67.

¶ 37    Defendant was found guilty of two counts of domestic battery. To sustain defendant's convictions, the State must prove beyond a reasonable doubt that defendant "knowingly without legal justification by any means *** [made] physical contact of an insulting or provoking nature with any family or household member." 720 ILCS 5/12-3.2(a)(2) (West 2024). Defendant specifically takes issue with the court's finding that he made physical contact of an insulting or provoking nature.

¶ 38    As explained above, the court stated that it did not find Witte credible. Instead, it believed Degrazio was a credible and consistent witness and relied on his testimony to reach its findings. The court's decisions regarding the credibility of each witness are given great weight. See *People v. Wheeler*, 226 Ill. 2d 92, 115 (2007). When findings of fact are dependent on the credibility of a witness, we defer to those decisions unless they are against the manifest weight of the evidence. *People v. Clark*, 2014 IL App (1st) 130222, ¶ 26. This is because the circuit court as the fact finder

11

is in the best position to observe a witness's behavior and tone. *People v. Cosey*, 82 Ill. App. 3d 968, 974 (1980). Further, the testimony of one witness, if credible, may sustain a conviction. See *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). Under such circumstances, eyewitness testimony may be found insufficient "only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *Cunningham*, 212 Ill. 2d at 280.

¶ 39    Degrazio's testimony established that he observed Witte lying on her side at the end of the driveway, and the defendant was on top of her "flailing" as if hitting her. Nothing obstructed his view of the scene in defendant's driveway. Witte's appearance that evening supports Degrazio's testimony. He and Pope each testified that Witte's clothes were dirty and she had marks that appeared to be injuries.

¶ 40    The court also found that the contact described by Degrazio was insulting and provoking in nature to a reasonable person. While Witte testified that she did not feel insulted or provoked by any contact with defendant, the standard by which this determination is made is an objective inquiry and not personal to the victim in a case. *People v. Davidson*, 2023 IL 127538, ¶ 16 ("[I]t is the nature of the [insulting or provoking] contact, not the actual impact on the victim, that must be established."). Thus, the trier of fact must determine whether a reasonable person under the circumstances would find the contact insulting or provoking. *Id.* This is the determination the circuit court made here. Degrazio testified that defendant was on top of Witte "flailing" and hitting her around the midsection. When viewing the evidence in the light most favorable to the State, a reasonable person under the circumstances would find this contact insulting or provoking.

¶ 41    Degrazio's testimony was clear and corroborated by other evidence presented at trial. Accordingly, the court's decision to believe him rather than Witte is not so unreasonable so as to create reasonable doubt. See *Belknap*, 2014 IL 117094, ¶ 67. When we consider the evidence in

12

the light most favorable to the State, we hold that a rational trier of fact could find that defendant committed domestic battery against Witte. See *Collins*, 106 Ill. 2d at 261. Therefore, defendant's convictions are affirmed.

¶ 42                                    III. CONCLUSION

¶ 43          The judgment of the circuit court of Du Page County is affirmed.

¶ 44          Affirmed.